509 So.2d 1012 (1987)
Irwin I. MUSLOW, Plaintiff-Appellant,
v.
A.G. EDWARDS & SONS, INC. & Keith O'Kelley, Defendants-Appellees.
No. 18708-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Writ Denied October 2, 1987.
*1015 Pugh & Pugh by Robert G. Pugh, Shreveport, for plaintiff-appellant.
Blanchard, Walker, O'Quin & Roberts by John T. Cox, Jr., J. Wes Wyche, Shreveport, for defendants-appellees.
Before HALL, MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
On July 13, 1984, plaintiff, Irwin I. Muslow, filed suit against A.G. Edwards & Sons, Inc. and Keith O'Kelley claiming damages for defamation, intentional infliction of mental suffering, assault, invasion of business interest and refusal of right to inspect corporate records. Trial was held on September 19 and 20, 1985. On June 27, 1986, the trial court, in an excellent written opinion, much of which we rely upon herein, rejected all claims of the plaintiff with prejudice and at plaintiff's cost. A judgment in favor of defendants was signed on July 9, 1986. From this judgment the plaintiff has appealed. We affirm.

BACKGROUND FACTS
Mr. Muslow, the plaintiff, had both a personal and partnership account with the Shreveport office of A.G. Edwards & Sons, Inc., (Edwards) for many years. However, he had not actually transacted any business with Edwards since 1979 until January 12, 1984. On January 12, 1984, Mr. Muslow contacted a broker at Edwards, Mr. William R. Axford, Jr., and placed a "day order" to purchase one thousand shares of the stock of Delta Drilling Company if that stock reached a specified price. In anticipation of the purchase Mr. Muslow signed a tax withholding certificate. The order was not filled on January 12, 1984 because the requisite market conditions failed to materialize. Because the order was not filled, it expired at the end of the day. Thus, plaintiff has not conducted any business with Edwards since 1979 which resulted in a fee being paid to Edwards. During this time period, Mr. Muslow maintained an account with one of Edwards' competitors, Merrill, Lynch, Pierce, Fenner & Smith, Inc.
Mr. Muslow is an attorney-at-law. He also places great emphasis upon his position as a financial adviser to his friends. Mr. Muslow is not a broker or licensed agent but does discuss market conditions and business transactions with numerous people. Mr. Muslow testified that by giving his advice, he created referrals for Edwards which resulted in transactions involving millions of dollars being handled by Edwards.
It was established at trial that Mr. Muslow went to the office of A.G. Edwards numerous times each week, if not daily. When he visited A.G. Edwards offices, he used the equipment provided for the convenience of Edwards' customers which was located in the public area of the offices, which included the quote machine, tickertape, New York Stock Exchange tape and the Dow Jones news service wire. There, *1016 he would frequently engage in conversations with other persons using the machines and discuss various aspects of the stock market. While engaging in these conversations, Mr. Muslow sometimes mentioned that he used the offices of Merrill-Lynch and even admitted in his testimony that he had used the phone in the Edwards' office to place an order with Merrill-Lynch.
Approximately two weeks before the incident giving rise to this litigation, Mr. Keith O'Kelley, the manager of the A.G. Edwards' Shreveport office, posted a sign near to the machines which was intended to discourage individuals from collecting information at Edwards while trading at another brokerage house. Mr. O'Kelley had noticed several persons, including Mr. Muslow, who had frequently used Edwards' equipment but were not doing business there. Through the utilization of this sign, Mr. O'Kelley hoped that these individuals would be reminded to conduct their stock transactions with his office. The sign read as follows:
NOTICE
In this area of our office, we at A.G. Edwards & Sons, Inc. are happy to provide our customers and prospective customers quotation and last trade information on stocks, both listed and OTC, bonds, options, commodities, financial and index figures, market statistics, along with the Dow Jones news, Poors Stock Reports, New York Stock Exchange and American Stock Exchange tickertape and related facilities for using them. These are extra services for our customers, as each broker already has this information on his desk in his office. The cost of these services are advancing as is exhibited by the fact that most other brokers are no longer providing this service. We appreciate our customers and intend to continue to provide these as long as we possibly can.

However, we are noting flagrant abuses of these services by persons who do not have active accounts with us, yet come here to obtain news and price information to direct trades to competing firms that do not go to the expense of providing such services. We do not think that this is fair or proper.
To our customers, we say"WELCOME and THANK YOU." To the abusers, we intend to say something else.
On March 20, 1984, Mr. Muslow came to the Edwards office. Mr. O'Kelley approached Mr. Muslow while in the public area of the office. Mr. Muslow testified that Mr. O'Kelly asked him in a normal tone of voice if he had read the sign. Mr. Muslow replied that he had not and Mr. O'Kelley asked him to do so. At this point, Mr. Muslow then read the sign. The evidence as to what transpired thereafter was conflicting.
Mr. Muslow testified that Mr. O'Kelley then rudely and harshly ordered him to leave the premises at once. Mr. Muslow testified that he then requested that he and Mr. O'Kelley talk about the situation in O'Kelley's office since they were currently in a public area. Both Mr. Muslow and Mr. O'Kelley testified that other people were present in the public area at this time. However, no one was presented at trial to testify that he heard Mr. O'Kelley talking to Mr. Muslow while in the public area.
When the parties retired to Mr. O'Kelley's office, Mr. Muslow sat across the desk from Mr. O'Kelley. Mr. O'Kelley's office is enclosed by glass. There was one door. The office door remained open. Mr. Muslow stated that when he inquired as to what had upset Mr. O'Kelley, Mr. O'Kelley "threw" himself across the desk, finger extended. Mr. Muslow testified that he thought Mr. O'Kelley was going to hit him and he ducked. Mr. O'Kelley allegedly called Mr. Muslow several names, including a "son of a bitch," "a liar," and "a leech." Mr. Muslow did not leave, but asked that Mr. Axford be summoned.
Mr. O'Kelley testified that he did not order Mr. Muslow off the premises while the two were in the public area. He testified that pursuant to Mr. Muslow's request, they went to Mr. O'Kelley's office. Mr. O'Kelley testified that he then attempted to explain to Mr. Muslow the expense of maintaining the tickertapes and other services. *1017 Mr. O'Kelley denied cursing Mr. Muslow, threatening him or calling him names.
Mr. Axford, a vice president at Edwards' Shreveport office, testified that his office was next to Mr. O'Kelley's, with only a glass wall between them. Mr. Axford testified that he neither heard nor saw anything that attracted his attention to the adjoining office that day until Mr. O'Kelley tapped on the glass and motioned for him to come over.
Mr. Muslow testified that when Mr. Axford entered the office he told Mr. Axford that while he might appear calm on the outside, he was in fact extremely upset. Mr. Muslow further stated that he recited to Mr. Axford what Mr. O'Kelley had called him; to which Mr. Axford replied, "I can understand why you would be upset." Mr. Muslow then asked him to verify the unfulfilled day order issued in January. Mr. Axford did so and stated that he did not want to get involved in the matter and left. Mr. Axford testified that, while he remembered the Muslow statement about not being calm and his own verification of the January order, he did not recall any other statement. He did not remember Mr. Muslow enumerating the names Mr. O'Kelley allegedly called him and he did not recall personally saying that he understood Mr. Muslow's composure. Mr. O'Kelley also testified that he did not recall Mr. Muslow reciting the alleged insults.
After Mr. Axford left Mr. O'Kelley's office, Mr. Muslow asked if Mr. O'Kelley would repeat those names in the courthouse on the witness stand; to which he received an affirmative response. They then exited the office and Muslow asked for Mr. O'Kelley's complaints in writing. Mr. O'Kelley declined.
Mr. O'Kelley's version of the conclusion of the incident is somewhat different. Mr. O'Kelley testified that he took Mr. Muslow's reference to the courthouse as a threat to sue. He told Mr. Muslow that if he was going to sue and wasn't going to do business with Edwards, it would be best if he didn't return. Mr. Muslow then allegedly asked what would happen if he returned anyway. Mr. O'Kelley stated that it was his understanding that "if you come back on a (sic) premises when you were not welcome, it constituted (sic) a trespass."
At some point during the incident in Mr. O'Kelley's office, Mr. Muslow informed Mr. O'Kelley of the large volume of business he claims to have obtained for Edwards. He also told Mr. O'Kelley that he was a stockholder in Edwards. On that day, Mr. Muslow had about thirty-one shares of stock in Edwards held in his Merrill-Lynch account in a "street name."
Following the incident in the Edwards office, Mr. Muslow complained to executives of Edwards. On March 25, 1984, he sent a mailgram to the chairman and president of the company, Mr. B.F. Edwards, III. On March 29, 1984, Stephen G. Sneeringer, vice president and counsel, responded, requesting more information. Mr. Muslow's brother also wrote to Mr. B.F. Edwards, III; Sneeringer likewise responded to him. On April 12, 1984 Mr. Muslow wrote a letter to Mr. Edwards. On April 24, Sneeringer wrote Mr. Muslow, informing him that the company supported Mr. O'Kelley's denial of facilities to him since he had not transacted any business with them in over four years. On April 25, Mr. Muslow again wrote to Mr. Edwards voicing his complaints.
The record shows that the incident was discussed by Mr. Muslow with several of his friends, some of whom also wrote to Edwards. Abie Worth wrote a letter on May 11, 1984 to which Mr. B.F. Edwards, III responded on May 16. In his reply, Mr. Edwards relayed Edwards version, noting that he did so only in response to Worth's letter. Isaac S. Wilson likewise wrote to Edwards on May 8, 1984 informing them that he was taking away his account because of the way Mr. Muslow was treated. The vice president, David Stortz, answered his letter, also presenting the company's side of the story.
Mr. Muslow claims that Edwards' responses were an invasion of his privacy and placed him in a false light.
Mr. Muslow filed suit on July 3, 1984 due to the above described incident. In a written *1018 opinion, the trial court denied each of Mr. Muslow's claims for damages as well as his request for a mandatory injunction allowing him to use the quotation machines on Edwards' premises. Mr. Muslow appeals, raising numerous issues. First, he complains of numerous errors by the trial court concerning its interpretation of the evidence presented. He also contends that the trial court erred in denying each of the claims raised. For the following reasons, we affirm the decision of the trial court.

FACTUAL REVIEW
Many of the issues raised on appeal require us to review the factual determinations of the trial court. In reviewing those factual determinations we apply the "clearly wrong" standard enunciated in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979). Our review of the record reveals that the factual determinations of the trial court are not clearly wrong. We agree with the observation of the trial court that this case
basically pits the plaintiff, Mr. Muslow, and Mr. O'Kelley against each other in what amounts of (sic) a "swearing match." Each is a well-respected gentleman of the community whose credibility is of the highest degree. We have no reason to accept the word of one over the other.
Where the unsupported testimony of a party having the burden of establishing a particular fact is contradicted by the testimony of the other party and the credibility of neither is attacked, in the absence of corroborating evidence or circumstances, it cannot be said that the party having the burden of proof has sustained that burden.
Walker v. Walker, 159 So.2d 344 (La. App. 2d Cir.1963); Johnson v. Johnson, 296 So.2d 470 (La.App. 2d Cir.1974). Consequently, "... Mr. Muslow has failed to carry his burden of proof ..."

1. Defamation
To maintain an action for defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. Cangelosi v. Schwegmann Brothers, Etc., 390 So.2d 196 (La.1980); Elmer v. Coplin, 485 So.2d 171 (La.App. 2d Cir.1986).
Mr. Muslow contends that several different acts by the defendants defamed him. First, Mr. Muslow contends that the act of requiring that he read the posted notice, coupled with the words in the notice, defamed him. The trial court denied this claim because it found that there were no defamatory words and that there was no publication to a third person. We agree with the trial court.
Plaintiff has not contended on appeal, as he did in the trial court, that he was defamed by the words and events which occurred in Mr. O'Kelley's office, or in the conversation which occurred later relative to whether plaintiff's return to the premises would constitute a trespass. Plaintiff has apparently abandoned his trial court contention that these events constituted defamation.
A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community. Defamatory communications violate one's right to good reputation and give rise to a cause of action to recover damages because of the violation. Elmer v. Coplin, supra; Freeman v. Cooper, 414 So.2d 355 (La.1982). Mr. Muslow contends that Mr. O'Kelley's request that he read the notice and the words of the notice establish that he is an abuser and unfair.
Even though Mr. O'Kelley's application of the notice to Mr. Muslow would indicate that Mr. O'Kelley believes Mr. Muslow to be one of those abusing the services offered by A.G. Edwards, which in the company's opinion is unfair, we do not find the words in the manner used, to be defamatory. It is not defammatory to advise persons who come upon business premises that free services which are being offered are only for the benefit of the customers of the business, and not for the public generally or for those who do not *1019 maintain an ongoing account with that business.
Furthermore, and most importantly, Mr. Muslow has failed to show that these words were communicated to anyone other than the person allegedly being defamed. The allegedly defamatory words were not communicated to a third person.
Mr. Muslow contends that it was proven by circumstantial evidence that others "must have heard" Mr. O'Kelley's request to Mr. Muslow that he read the notice. Both Mr. O'Kelley and Mr. Muslow testified that there were other people in the public area. Mr. O'Kelley spoke in a normal tone of voice and there was no testimony presented at trial that any person overheard Mr. O'Kelley's request. Further, there is no evidence in the record which proves that anyone in the public area at that time or at any other time for that matter, was aware that the sign was directed at Mr. Muslow, that Mr. O'Kelley made it known to anyone that he was associating Mr. Muslow with the sign or was directing the content of the sign to Mr. Muslow.
We agree with the trial court that even if defamatory words were used, they must actually be communicated to a third person for, unless the defamatory words are actually communicated, a person cannot be defamed. While circumstantial evidence may be sufficient to prove communication in some cases, such evidence is clearly insufficient in this case.
Therefore, since plaintiff has failed to show that the content of the sign consisted of defamatory words or that the circumstances of Mr. O'Kelley's request that plaintiff read the sign resulted in a communication to a third person, we need not discuss, in detail, the other elements which must be proved in a defamation action. However, it is clear that plaintiff has also failed to prove that there was any falsity involved in the conversation between Mr. Muslow and Mr. O'Kelley, or in the words of the sign itself. Further, plaintiff has failed to prove that there was any malice, either actual or implied, in the actions taken by Mr. O'Kelley. And last, there was no showing that Mr. Muslow has been injured or damaged by this event other than as may have occurred by his own communication to others of his version of the events of March 20, 1984.
Mr. Muslow also contends that the letters written by officers of Edwards to two of Mr. Muslow's friends were defamatory. The letters which were written by Edwards' officers were in response to letters written by Mr. Muslow's friends after being informed by Mr. Muslow of his perception of the events which occurred at the Edwards office.
A review of the letters written by Edwards' officers shows that they are not defamatory. The letters answer, in general terms, the inquiries of Mr. Muslow's friends, and give Edwards' position that the company supported Mr. O'Kelley's version of the incident.
Further, we note that the Edwards letters were not unsolicited letters, but were written in direct response to inquiries which were initiated by plaintiff's friends. Considering the content of the responses, we conclude, as did the trial court, that plaintiff has failed to prove defamation by the defendants resulting from those letters.

2. Intentional Infliction of Mental Suffering
Plaintiff contends that the actions of Mr. O'Kelley constituted an intentional infliction of mental suffering upon him. The general rule of law concerning damages for mental distress due to intentional torts requires that the plaintiff prove that the defendant either actively desired to bring about the mental anguish or realized to a virtual certainty that it would occur. Recovery for mental anguish caused by intentional torts has generally been limited to instances of outrageous conduct. Steadman v. South Central Bell Telephone Company, 362 So.2d 1144 (La.App. 2d Cir. 1978); Breaux v. South Louisiana Electric Coop Association, 471 So.2d 967 (La. App. 1st Cir.1985); Smith v. Mahfouz, 489 So.2d 409 (La.App. 3rd Cir.1986).
*1020 Steadman, supra, defined "outrageous conduct" as conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.
First, with respect to the intent of the defendants to inflict mental suffering on the plaintiff, we agree with the holding of the trial court that Mr. Muslow has failed to prove that the defendant actively desired to bring about mental anguish or realized to a virtual certainty that it would occur. Secondly, considering the definition of "outrageous conduct" announced in Steadman, supra, it is clear that the conduct of Mr. O'Kelley, as found by the trial court, is not conduct so outrageous as to constitute an intentional infliction of mental suffering.

3. Assault
Words alone may not be sufficient to constitute an assault; however, threats coupled with the present ability to carry out the threats are sufficient when one is placed in reasonable apprehension of receiving an injury. Castiglione v. Galpin, 325 So.2d 725 (La.App. 4th Cir.1976); State in Interest of Cortez, 319 So.2d 496 (La. App. 4th Cir.1975).
Mr. Muslow argues that he was assaulted when Mr. O'Kelley "threw himself across his desk and swung his hand at me with a finger extended." Mr. Muslow's testimony implies that Mr. O'Kelley is a more "imposing figure" than Mr. Muslow and that the language used by Mr. O'Kelley already had Mr. Muslow quite upset. The trial court held that Mr. Muslow failed to prove that Mr. O'Kelley threw himself across the desk as alleged, and he failed to prove that the facts justified Mr. Muslow in a reasonable belief that he was about to receive an injury.
The trial court's decision is correct. Mr. O'Kelley denied ever taking the actions described by Mr. Muslow. Additionally, even if we assume that the testimony of Mr. Muslow is factually correct, we are not convinced that the actions allegedly taken by Mr. O'Kelley were sufficient to create a reasonable apprehension that Mr. O'Kelley was going to strike Mr. Muslow or that Mr. Muslow was about to be injured. No verbal threat of physical harm was ever made. Mr. Muslow and Mr. O'Kelley were always separated by the desk. This was a business office. The office door was open. There was no weapon or closed fist as if a blow was to be struck. Mr. Muslow never left his chair. Thus, under these facts, there was no reasonable apprehension of receiving an injury.

Invasion of Business Interest
To recover for an invasion of business interest, a party must show that a defendant improperly and maliciously influenced others not to deal with him. An individual, regardless of his motive, (other than those related to civil rights, as discussed hereafter), has an absolute right to refuse to deal with another. However, the right to influence others not to deal is not as broad. Sandolph v. P & L Hauling Contractors, Inc., 430 So.2d 102 (La.App. 5th Cir.1983).
Plaintiff is an attorney-at-law, but he is not a licensed dealer in securities or a registered broker.
The trial court properly held that Mr. Muslow has made no showing that Edwards or Mr. O'Kelley influenced others not to do business with Mr. Muslow or interfered in plaintiff's practice as an attorney. This claim has no merit.

Violation of Shareholders' Rights
Mr. Muslow contends that as owner of thirty-one shares of Edwards stock he is entitled to access to Edwards office to "inspect" the facilities and the books of the company. Therefore, he contends that his rights as a shareholder in Edwards were violated when he was not allowed to return to the Edwards office in Shreveport. Mr. Muslow stated that he was afraid to go to any Edwards office, whether in Shreveport or not, because of the statement by Mr. O'Kelley that if he returned it would constitute a trespass.
*1021 The trial court held that Mr. Muslow's rights as a shareholder had not been violated because Louisiana has not recognized as a right of a shareholder the right to go on premises and inspect actual business operations, except as provided by statute. As stated in Phillips v. Wagner, 470 So.2d 262 (La.App. 5th Cir.1985), certain rights belong exclusively to the corporation and not to its members. The corporation is distinct from the members who compose it. Therefore, shareholders are not entitled to claim all rights that would normally be held by the owner of a sole proprietorship. Further, Mr. Muslow has made no showing that any right granted by LSA-R.S. 12:75[1] or LSA-R.S. 12:103[2] (such as the right to vote or inspect corporate records) has been denied to him, or that he was entitled to a mandatory injunction.
This assignment of error is without merit.

Invasion of Privacy
Mr. Muslow asserts that his petition to the trial court establishes a cause of action based upon an invasion of his right of privacy. The trial court did not specifically mention this cause of action in its opinion.
The right of privacy embraces four different interests. One type of invasion takes place by the appropriation of an individual's name or likeness, for the use or benefit of another. A second occurs when the defendant unreasonably intrudes upon the plaintiff's physical solitude or seclusion. Third, an invasion of privacy occurs through publicity which unreasonably places the plaintiff in a false light before the public. This publicity need not be defamatory in nature, but only objectionable to a reasonable person under the circumstances and it must contain either falsity or fiction. A fourth type of invasion is represented by unreasonable public disclosure of embarrassing private facts. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979); Lucas v. Ludwig, 313 So.2d 12 (La.App. 4th Cir.1975).
An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of a defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Jaubert, supra.
It is the contention of Mr. Muslow that Mr. O'Kelley and Edwards invaded his privacy by unreasonably placing him in a false light before the public on two different occasions: when Mr. O'Kelley spoke to Mr. Muslow while in a public area of Edwards' office and when officials for Edwards wrote in response to letters received by them from friends of Mr. Muslow.
We do not find that the actions of Mr. O'Kelley or of Edwards were unreasonable. We have already determined that no defamation occurred, that Mr. Muslow was not assaulted and that the other contentions referred to above have no merit. Further, and as also previously mentioned, one has a right to refuse to do business with another. Sandolph v. P & L Hauling Contractors, Inc., supra. See also, the opinion of administrative law judge of the Commodity Futures Trading Commission in Salezieder v. Reinhart, Comm.Fut.L.Rep. ("CCH") ¶ 22,283 (1984). Mr. O'Kelley *1022 took reasonable steps to insure that the facilities at the Edwards office in Shreveport would be used by those actively doing business with Edwards. The letters sent by officials of Edwards in response to letters received from Mr. Muslow's friends were reasonable replies to Edwards' customers who were making complaints and threats of ending their business relationship with Edwards. Plaintiff has therefore failed in his burden of proving an invasion of privacy under the criteria of Jaubert, supra.
This assignment of error is without merit.

Abuse of Rights
Mr. Muslow contends that Mr. O'Kelley was guilty of an abuse of rights as a result of the manner in which he informed Mr. Muslow that he was no longer welcome on the premises. The abuse of rights doctrine was recognized by the Louisiana Supreme Court in Morse v. J. Ray McDermott & Company, Inc., 344 So.2d 1353 (La.1976). The main criteria for applying the abuse of rights doctrine are: (1) the exercising of rights exclusively for the purpose of harming another or if the predominant motive is to cause harm; (2) the nonexistence of a serious and legitimate interest that is worthy of judicial protection; (3) the right has been used in violation of moral rules, good faith or elementary fairness, or (4) the holder of the right exercised the right for a purpose other than that for which the right was granted. Illinois Central Railroad Company v. International Harvester, 368 So.2d 1009 (La. 1979); Housing Authority of City of Abbeville v. Hebert, 387 So.2d 693 (La.App. 3rd Cir.1980); Mascaro v. Wokocha, 489 So.2d 274 (La.App. 4th Cir.1986).
Our review of the conduct of all parties in light of the foregoing jurisprudence reveals nothing which would sanction the application of the abuse of rights doctrine.
Our review of the record reveals that the actions of the defendants were not undertaken with a motive to harm Mr. Muslow, but resulted from a legitimate business motive to provide services for their currently active customers. Certainly this motive is entitled to judicial protection. The plaintiff has failed to prove that the defendants acted unfairly or that they misused their rights in this case.

Violation of Civil Rights
It is also the contention of Mr. Muslow that Mr. O'Kelley and Edwards violated his civil rights based upon the Louisiana Constitution and upon Federal law. He first complains that the aforementioned acts were in violation of the Louisiana Constitution of 1974 Art. 1 § 12, which provides:
In access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex or physical condition.
Further, Mr. Muslow contends that his rights, as provided by the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq., were violated. This legislation protects persons from discrimination based on race, color, religion, or national origin. Additionally, he cites numerous court decisions concerning the violation of civil rights under 42 U.S.C. § 1983. However, Mr. Muslow has failed to prove that any alleged discrimination was committed by anyone acting under "color of law," Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978), or that he was discriminated against on the grounds of his belonging to any of the categories of persons protected by the above cited laws.
Last, Mr. Muslow quotes Bonomo v. Louisiana Downs, Inc., 337 So.2d 553 (La.App. 2d Cir.1976) for the proposition that "the basis for excluding persons of a particular category from a business open to the public" is done at the proprietor's risk, and must be done for a purpose which is reasonable and not contrary to public policy or constitutional principles." at 558. The purpose for which Mr. Muslow was excluded, to prevent the excessive use of customer services by non-customers, is reasonable *1023 and not contrary to public policy or constitutional principles. Therefore, this assignment of error is meritless.

CONCLUSION
For the foregoing reasons, all the assignments of error filed by plaintiff-appellant, Erwin I. Muslow, are found to be without merit and the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, Erwin I. Muslow.
AFFIRMED.
NOTES
[1] LSA-R.S. 12:75 provides in part:

Except as otherwise provided in the articles, each shareholder of record shall have the right, at every shareholders' meeting, to one vote for each share standing in his name on the books of the corporation; ...
[2] LSA-R.S. 12:103 provides in part:

D. (1)(a) Upon at least five days' written notice any shareholder, except a business competitor, who is and has been the holder of record of at least five percent of the outstanding shares of any class of a corporation for at least six months shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation and to make extracts therefrom. (emphasis supplied)