645 So.2d 785 (1994)
William Raymond SMITH
v.
ARKANSAS LOUISIANA GAS COMPANY.
No. 26180-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1994.
Rehearing Denied December 1, 1994.
*786 McGlinchey Stafford Lang by Donna Galchus, Russell Gunter, Little Rock, AR, and Blanchard, Walker, O'Quin & Roberts by Lawrence W. Pettiette, Jr., Shreveport, for appellant.
Walker, Tooke, Perlman & Lyons by Walter Flanders Clawson, Shreveport, for appellee.
Before LINDSAY, J., and PRICE and JONES, JJ. Pro Tem.
PRICE, Judge Pro Tem.
Appellant, Arkansas Louisiana Gas Company ("Arkla") and nine individual defendants were sued by William Raymond Smith for defamation and invasion of privacy. Judgment was returned in favor of the nine individual defendants on both causes of action. Arkla also won on the defamation cause of action but was cast in judgment for the invasion of privacy claim. It is from this judgment that Arkla appeals. For the reasons that follow, we reverse.

FACTS
During 1985, Arkla carried out a survey of company employees to find out if improvements in working conditions of employees were needed. Employees were requested to answer a questionnaire. Arkla's human resources division then met with employees to discuss the complaints and needs of their particular offices.
Arkla has a Dalzell Street facility that accommodates meter setters, dispatchers, leak survey and other personnel for the Shreveport area. In 1985, Ed Hines was employed as a supervisor over the dispatchers at Dalzell. Hines reported to Smith, the appellee, who acted as the manager over the service department. Smith in turn reported to Rodney Tabor, the area manager for Shreveport. Tabor's office was also at the Dalzell Street facility, and he was responsible for its operation. Tabor reported directly to Billy Nichols, the vice president of operations *787 for the Texas and Louisiana division. The individual defendants, Patti DeBroeck, Vicki Cyrus, Sandra Wade, Steve Cude, Steve Cooley, Cleveland Cyrus, John DeWitt, Charles McFerrin and Cynthia Gibson all worked in the dispatch office as dispatchers and clerks. All, except Cynthia Gibson, were under the supervision of Hines.
A work group formed to prepare an initial feedback report for the attitude survey consisted of Sandra Wade, Buddy Cyrus, Mike Weisinger and Patti DeBroeck. A problem they mentioned in their initial feedback report was Ed Hines's use of abusive language. After reviewing the document, Hines approached the work group and told them that he would "do better" and not use this language if they would agree to take the section on abusive language out of the report. The dispatch employees met and voted on Hines's proposal; they decided to take it out. Nevertheless, when the report arrived at the human resources department, they noticed the "whited out" section of the feedback report and somehow obtained the original report without the "white out" later.
Thereafter, Diedra Owens, an associate human resources representative, was asked to visit the Dalzell office. When she arrived, Owens initially met with 50 or 60 service technicians and a couple of members of the dispatch group to discuss employment issues. At the conclusion of this meeting a service technician, Billy Kline, suggested that she speak to the dispatch employees. He had been temporarily assigned to the Dalzell Street office in early 1986. Kline stated that a problem existed concerning Hines's abusive language and his treatment of the female employees. He also told Owens that he would not want his wife treated like Hines deals with the female clerks.
Following her discussion with Kline, Owens met with the dispatch department employees in two meetings. They discussed various problems regarding the operations of the dispatch office, including Hines's abusive language, intimidation and rubbing of the females' shoulders. At this time new allegations against Smith arose. Subsequently, Owens reported these revelations to David Crow, the vice president of human resources, who had initially asked her to visit the dispatch office regarding employee relations. Crow then contacted Jack Sanchez, the director of corporate compliance programs, and asked him to begin investigating the matter. Before working for Arkla, Sanchez had been employed with the Equal Employment Opportunity Commission for 13 years as an investigator/supervisor in Birmingham, Alabama.
On April 14, 1986, Sanchez and Owens began the investigation by separately interviewing DeBroeck, Cyrus and Wade, the female employees working in the dispatch office. These three individuals related incidents of sexual harassment and abusive language concerning Hines. They also told of similar acts committed by Smith. These statements were reduced to writing, read and signed by each of these persons.
The next day Nichols, Sanchez and Crow met with Rodney Tabor, Smith's immediate supervisor, to discuss the situation. They decided to place Smith and Hines on Administrative Leave pending further investigation. At this time, Smith was only told that serious charges had been made against him by employees under his supervision. The specifics were not revealed.
That same day, statements were taken from the male employees of the office. While none of their statements described identical events, they confirmed and corroborated the female clerks' statements as to a common theme of abusive language and sexual misbehavior that occurred at the Dalzell office with regards to both Smith and Hines. Formal statements were not taken from several Dalzell employees that either lacked knowledge of the situation and/or did not want to get involved.
During the course of the investigation Sanchez was told to speak to Cynthia Gibson, who was alleged to have relevant information even though she was not under Smith's supervision. In her formal statement taken on April 17, 1986, Gibson related having witnessed Smith make an indecent sexual proposal to another female employee at a time when Gibson was visiting in the area supervised by Smith. She also stated Smith began *788 making comments as to her attractiveness which were sexually suggestive.
On April 18, 1986, Tabor asked Smith to return to the office where he informed Smith that he had been accused of sexual harassment and failure to prevent sexual harassment. Smith was again sent home where he remained on suspension until further notice. After all the employee statements had been prepared, Nichols and Crow met with Arkla's president and executive vice president to discuss the disclosures and the appropriate disciplinary action. Crow recommended that Smith be terminated, but Nichols suggested that he merely be demoted and transferred.
On April 24, 1986, Smith was informed again that he had been accused of sexual harassment and failure to prevent sexual harassment. He was never told who had accused him, nor the specifics of the accusations. Notwithstanding his objections of innocence, he was told that he could either resign, accept a demotion or be fired. Arkla further stated that they would fight his unemployment claim if he did not resign or accept the demotion. Smith was forced to make an immediate decision, and he chose the demotion and was placed in a non-supervisory position at a reduction in salary of approximately $700.00 per month.
Subsequent to Smith's demotion, Nichols called four or five staff managers to a meeting, including Richard Yates, manager of operations and service in the division office. Yates would ultimately replace Smith at the Dalzell facility. Among other topics of discussion and without mentioning specifics, the vice president informed these individuals that Smith had been demoted for sexual harassment. Also, Tommy Weaver, a foreman of field personnel at the Dalzell service department, testified that he received the same information at a larger meeting when Tabor made the disclosure to a group of approximately 30 to 35 field and service personnel at the Dalzell facility.
As a result of these actions, Smith filed suit against Arkla on April 13, 1987. In his suit he alleged that the defendants disseminated information accusing him of sexual misconduct throughout the Arkla employees and among the general population of the Ark-La-Tex community by the agents and employees of Arkla. He alleged that these actions defamed him and constituted an invasion of privacy by placing him in a false light before the public. In his original petition, Smith also alleged he had been wrongfully terminated because of his age, but this claim was subsequently withdrawn before trial.
Following a lengthy trial, the jury returned a verdict in favor of the nine individual defendants on both causes of action and for Arkla on the defamation claim. The jury awarded $25,000 damages against Arkla on the invasion of privacy claim. Following entry of the judgment and in response to a JNOV filed by plaintiff, an additur increased the amount awarded to $100,000.00.

DISCUSSION
On this appeal we are concerned solely with the correctness of the jury verdict finding Arkla had invaded Smith's privacy.
Arkla contends error was committed by the trial court in instructing the jury in reference to a qualified privilege which it claims should have afforded it protection from liability for the communication to selected employees of the reasons for the removal of plaintiff from his supervisory position at the Dalzell facility. Arkla further contends that the decision of this Court in Hines v. Arkansas Louisiana Gas Co., 613 So.2d 646 (La.App. 2d Cir.), writ denied, controls the issues presented in this case and mandates that the statements made by it which plaintiff alleges violated his privacy be subject to the qualified privilege.
Hines was tried before a jury in Caddo Parish somewhat in advance of the trial of this matter in Bossier Parish and resulted in a jury verdict for Hines against the individual defendants and Arkla for defamation and invasion of privacy. This Court reversed the judgment finding that the statements made by the individual defendants which accused Hines of sexual harassment were not proven to be false or malicious which are necessary elements of a claim for defamation and that defendant Arkla enjoyed a qualified privilege which applied to the publications challenged as invading plaintiff's privacy.
*789 It is unfortunate that the trial judge did not have the Hines decision of this Court available at the time he was required to instruct the jury in this case as Hines and the subject case arose out of common facts and circumstances which culminated in the dismissal of Hines and the demotion of plaintiff, Smith.
After reviewing the instructions as a whole, and taking into consideration this Court's decision in Hines v. Arkansas Louisiana Gas Company, supra, we agree that the instructions were inadequate in defining the defense of qualified privilege with respect to the invasion of privacy claim.
The instructions the court gave the jury with respect to Smith's invasion of privacy and defamation claims, and the defendants' privilege were as follows:
Plaintiff's first claim is for invasion of privacy by defendants. The right to privacy may be invaded by publicity which unreasonably places a person in a false light before the public and by unreasonable public disclosure of embarrassing private facts. Publicity means that the matter is made public by communicating it in such a fashion that it is reasonably certain to become one of public knowledge. This requirement is different from the publication element in defamation. In order for defendants' actions to have placed plaintiff in a false light before the public, plaintiff need not prove that the defendants' actions were defamatory in nature; but only that they contain falsity or fiction and are objectionable to a reasonable person under the circumstances. This occurs where the defendants' conduct unreasonably and seriously interferes with plaintiff's privacy. There need not be malice on the part of defendants. In determining if the defendants' conduct was reasonable, you must weigh the plaintiff's interest in protecting his privacy from serious invasion with defendants' interest in pursuing his course of conduct. The plaintiff's second claim is that the defendants defamed him. To recover for defamation plaintiff must prove the following: Number one, the defendants spoke or wrote defamatory words about Raymond Smith. Number two, that these words were conveyed to someone other than Raymond Smith and to someone who did not have a corresponding interest or duty in the subject matter. Number three, that the words are false. Number four, that defendants knew or should have known that the words were false or that the words were said with malice. Or put another way, that defendants lacked reasonable grounds for believing the words were true. And number five, that Raymond Smith sustained damages as a result of these words. The individual defendants are sued on the basis of their statements and you are to determine if the statements were true when given or that the individual defendants reasonably believed the statements to be true when given. A person is not liable for damages caused by re-publication of his defamatory remark by a third person unless under the circumstances he reasonably should have expected the re-publication. Under Louisiana law, a privilege may be applicable, and if so, acts as a defense to recovery. The defendants have the burden of proving its applicability by a preponderance of the evidence if the communication is made in good faith on any subject matter in which the person communicating has an interest or in reference to which he has a duty to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate.
A reasonable interpretation of these instructions would seem to preclude the defense of privilege as to the invasion of privacy claim. The court in the above quoted instruction separated its discussion into two categories "plaintiff's first claim" which covered the claim for invasion of privacy, and the "plaintiff's second claim," in which the court defined defamation. Under the second category on defamation, the court mentioned the Louisiana law on privilege without specifying that this defense applied to invasion of privacy *790 as well. In this chronology a juror would easily have understood that the privilege only applied to the defamation claim.
Qualified privilege is the principal defense urged by the defendant Arkla. It was entitled to have this defense fully explained to the jury by court instructions which clearly made it applicable to the invasion of privacy claim. We find the charge as given to be at least ambiguous in this respect and inadequate to properly instruct the jury on defendant Arkla's primary defense.
Ordinarily, factual findings of the jury are accorded great weight and may not be disturbed by the appellate court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991), writ denied. However, when the jury verdict is based on instructions which are faulty in a critical regard, the verdict is tainted and not entitled to a presumption of regularity. Stovall, 577 So.2d at 738; Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.App. 1st Cir.1987), writ denied. Adequate jury instructions are those that fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Sparacello v. Andrews, 501 So.2d 269 (La.App. 1st Cir.1986), writ denied. When the reviewing court finds that an erroneous jury instruction probably contributed to the verdict, the verdict must be set aside on appeal. Picou v. Ferrara, 483 So.2d 915 (La.1986). The reviewing court may then conduct an independent investigation of the facts from the record before it and render judgment on the merits. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Because we find that the charge inadequately instructed the jury on Arkla's defense of privilege so that they were unable to reach an informed verdict, we feel it necessary to review the record de novo.
In Muslow v. A.G. Edwards & Sons, Inc., 509 So.2d 1012 (La.App. 2d Cir. 1987), this Court defined a person's right of privacy and set forth the conduct which may lead to an actionable invasion of this right. An invasion of privacy occurs through publicity which unreasonably places the plaintiff in a false light before the public. This publicity need not be defamatory in nature, but only objectionable to a reasonable person under the circumstances. The publicity must also contain either falsity or fiction. Another recognized invasion is characterized as an unreasonable public disclosure of embarrassing private facts. Id. at 1021; See also, Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386 (La.1979).
An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of a defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Jaubert v. Crowley Post-Signal, Inc., supra.
In Hines, supra, this Court has already determined that the investigation Arkla conducted as to Hines was reasonable. Smith was a subject of the investigation as well as Hines. Arkla requested Jack Sanchez and Diedra Owens conduct the investigation. Sanchez worked for the Equal Employment Opportunity Commission for 13 years as an investigator/supervisor prior to joining Arkla. They took separate and independent statements from the individual defendants. These individuals set forth sufficient allegations against Smith to justify Arkla's actions. Moreover, upon the advice of others, Sanchez and Owens also took Cynthia Gibson's statement regarding Smith's conduct. Each statement given supported and corroborated the statements given by the others. Because of the offensiveness of these allegations, we feel it is unnecessary to repeat them. Due to the abundance of corroborating statements, and after serious consideration, Arkla decided upon the actions that were ultimately taken. We agree that Arkla was justified and reasonable in its actions because of the serious nature of these charges and the number of people who separately attested to these facts.
To sustain his action for damages for invasion of privacy as alleged by plaintiff herein, there must be proof of publicity that unreasonably places plaintiff in a false light *791 before the public or an unreasonable public disclosure of embarrassing private facts about plaintiff. The publications which plaintiff relies upon herein stem from the meetings called by Arkla officials, Nichols and Tabor, to advise the staff managers and other personnel who worked under plaintiff and Hines of the demotion of plaintiff and the termination of Hines because of their participation in or permitting of sexual harassment. These are the identical publications relied on by Hines in his suit against Arkla.
This Court in Hines found these communications to be privileged for the reason that an employer who undertakes an investigation of employee misconduct is protected by a qualified or conditional privilege when making a statement in good faith, on a subject in which the employer has an interest or duty, to persons having a corresponding interest or duty. This Court in the Hines opinion further found that the statements made by Nichols and Tabor were made in good faith, i.e., with reason to believe they were truthful. The court further found that Arkla owed a duty to investigate allegations of sexual harassment and that its employees additionally had a legitimate interest in knowing what activities could result in their termination.
We find this rationale to be equally applicable to plaintiff, Smith, in this case and that Arkla was protected by the same qualified privilege as found by this Court in Hines for its communications concerning the demotion of plaintiff Smith. Therefore, we reverse the jury's assessment of liability for the invasion of privacy claim.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment is reversed at appellee's costs.
REVERSED.

APPLICATION FOR REHEARING
Before SEXTON, LINDSAY, HIGHTOWER, JJ., PRICE, J. Pro Tem and JONES, J.
Rehearing denied.