William J. MAHAFFEY and Celeste Leach Mahaffey

v.

OFFICIAL DETECTIVE STORIES, INC. and Red River News Company, Inc.

Civ. A. No. 8103.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Nov. 5, 1962.

Thomas A. Self, Many, La., for plaintiffs.

Stone, Pigman & Benjamin, Edward B. Benjamin, Jr., Ewell P. Walther, Jr., New Orleans, La., and Dilworth, Paxson, Kalish, Kohn & Dilks, Louis Hill, Philadelphia, Pa., for defendants.

HUNTER, District Judge.

The Court having granted defendants' motion to dismiss under Rule 41(b) at the conclusion of plaintiffs' case, makes the following findings of fact and conclusions of law as required by Rule 41(b). These findings of fact are necessarily based upon the testimony of plaintiffs' witnesses and the stipulations and exhibits entered into evidence by consent of all parties at the inception of plaintiffs' case.

### FINDINGS OF FACT

1. The plaintiffs, William J. Mahaffey and Celeste Leach Mahaffey, are residents of the State of Louisiana.

2. Defendant Official Detective Stories, Inc. (herein called "Official") is a corporation organized under Delaware law with its office in Philadelphia, Pennsylvania.

3. Defendant Red River News Company, Inc. (herein called "Red River") is

a Louisiana corporation doing business in the State of Louisiana.

4. Official publishes a magazine known as "Official Detective Stories," (herein sometimes called the "magazine").

5. Red River distributes various publications, periodicals, newspapers, books and magazines, in certain parts of the State of Louisiana, including the magazine.

6. On October 17, 1959, plaintiffs' son, Billy Celton Mahaffey, was killed by a knife-wielding assailant in the City of Houston, Texas.

7. The events surrounding the death of Billy Mahaffey and the police investigation of his murder were publicized in Houston, Texas newspapers during several days following his death.

8. A person named Obie Mills was subsequently apprehended for the murder of Billy Mahaffey and on December 16, 1959, Obie Mills was convicted of the murder. The conviction of Obie Mills was publicized in Houston, Texas newspapers.

9. In the April 1960 edition of the magazine appeared an article (herein called "the article") relating the events surrounding the death of Billy Mahaffey and the events involved in the investigation of his death conducted by the Houston police. This article, according to the evidence, was reasonably accurate. The only slight inaccuracies in the article that plaintiffs claim (the color of Billy Mahaffey's hair, his age and the fact that his automobile was more bloodstained than the article reported) were not in any way damaging to plaintiffs. The police reports in connection with the investigation of the murder of Billy Mahaffey and the testimony of the investigating officers (taken by deposition) reveal that the article played down or omitted certain sensational and sordid facts about the murder and the persons involved therein. The April 1960 issue of the magazine appeared on newsstands about March 1, 1960, about four and one-half months after the death of Billy Mahaffey and about two and one-half months after the conviction of Obie Mills.

10. The April, 1960 issue of the magazine was sold to subscribers who receive their copies in the mails and by newsstand sales in the following numbers:

(a) Nationwide—276,512 copies;

(b) in Louisiana—3,748 copies;

(c) in Lake Charles, Louisiana—155 copies;

(d) in Alexandria, Louisiana—199 copies;

(e) in Many, Louisiana—5 copies;

(f) in Florien, Louisiana—No copies;

(g) in Natchitoches, Louisiana—20 copies;

(h) in DeRidder, Louisiana—16 copies;

(i) in Leesville, Louisiana—18 copies.

11. The plaintiffs live near Florien, Louisiana. The article was read by persons who were acquainted with the plaintiffs and caused them embarrassment and humiliation. Previous to its publication, not much was known of the circumstances surrounding Billy Mahaffey's death and consequently it was not the source of local conversation. Some persons in the community believed that he had been killed in an automobile accident. After the publication of the article the circumstances of the death became a major topic of conversation in the community, and this has caused embarrassment to plaintiffs.

12. The article does not mention the names of the plaintiffs. It does not state that Billy Mahaffey ever lived in Louisiana nor does it in any way associate him or his family with Louisiana. The article does not name any relative of Billy Mahaffey. The article does not contain any photographs of Billy Mahaffey, the plaintiffs, any relative of Billy Mahaffey, the residence of Billy Mahaffey, or the residence of plaintiffs. In fact the only photographs published in connection with the article are photographs of the scene of the murder and the police officers who investigated the murder.

13. The obvious purpose of the magazine was to make money through sale of copies of the magazine. However, the article was not used to promote any particular product or service, but was published for reader interest.

## CONCLUSIONS OF LAW

1. Whether plaintiffs' claim is based upon libel, an invasion of privacy or deprivation of a property right, they cannot recover.

■ 2. *Libel.* In Louisiana a parent has no standing in court to recover for damages resulting from libellous matter published concerning his child. Pattison v. Gulf Bag Co., 116 La. 963, 41 So. 224. This is but part of the broad Louisiana rule that a parent may not recover for his own mental anguish and anxiety resulting from a tort committed against his child. See Honeycutt v. American General Insurance Co., La. App., 126 So.2d 789; Hanna v. Otis, 151 La. 851, 92 So. 360. LSA–Civil Code Article 2315 permits one person to recover in respect of damages to another only in the case of survival of actions. Since the article was published after Billy Mahaffey's death, there is no question of survival of a cause of action. Finally, we have found that the article was truthful. Under Louisiana law, absent proof that the publication was untrue, no libel action lies. See LSA–R.S. 13:3602; Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222; Pool v. Gaudin, 209 La. 218, 24 So.2d 383.

■ 3. *Invasion of Privacy.* Recovery for invasion of a right of privacy is only available when the plaintiff's *private* affairs have been given unauthorized exposure. The events surrounding the death of Billy Mahaffey and the police investigation were not private affairs; they were matters of public, newsworthy interest. The publication of a newsworthy event of public interest is privileged. See Rozhon v. Triangle Publications, Inc., 230 F.2d 359 (7th Cir., 1956); Estill v. Hearst Publishing Company, 186 F.2d 1017 (7th Cir., 1951); Sidis v. F-R Publication Corporation, 2 Cir., 113 F.2d 806, 138 A.L.R. 15; Rozhon v. Triangle Publications, Inc., supra.

■ 4. *Deprivation of Property Right.* The event was the subject of legitimate public news interest. It follows that no private property right therein attached to plaintiffs. It has been found that the article was published for reader interest and was not used to promote or publicize a particular product or service. Under these circumstances, plaintiffs may not successfully contend that they are entitled to recover because of a "commercialization" of the events. See Jenkins v. Dell Publishing Company, 3 Cir., 251 F.2d 447.

5. An appropriate judgment is entered dismissing plaintiffs' case under Rule 41(b).