375 So.2d 1386 (1979)
James J. JAUBERT et ux.
v.
CROWLEY POST-SIGNAL, INC.
No. 64516.
Supreme Court of Louisiana.
October 8, 1979.
*1387 Kenneth O. Privat, Privat & Regan, Crowley, for defendant-applicant.
Noble M. Chambers, Jr., Aaron, Aaron & Chambers, Crowley, for plaintiff-respondent.
DIXON, Justice.
In August, 1977 Mr. and Mrs. James Jaubert returned from a brief business trip to discover that a photograph of their family home had been published on the front page of the Crowley Post-Signal, the local newspaper. The photograph was one of a series of at least six scenes of Crowley and its environs, all taken by the newspaper's photographer on the same day and published within a period of about two weeks. In the photograph, the Jauberts' home appeared framed by the branches of an oak tree; the caption under the picture read, "One of Crowley's stately homes, a bit weatherworn and unkempt, stands in the shadow of a spreading oak." Although neither the street address nor the names of the owners appeared in the newspaper, some residents of Crowley recognized the home as the Jauberts' and commiserated with them about the unwelcome publicity. The Jauberts sued the newspaper for invasion of privacy, seeking $15,000 each in damages for mental suffering, embarrassment, and humiliation. The trial court entered judgment for the plaintiffs and awarded each spouse $500. The judgment was affirmed by the Third Circuit Court of Appeal, which held that the publication was not privileged as newsworthy, and that an action for invasion of privacy was precluded neither by the fact that the publication did not identify the owners of the house nor by the fact that the photograph depicted the house as it was visible from a public street. We reverse.
In 1890 Samuel D. Warren and Louis D. Brandeis published an article[1] tracing the development and advocating the recognition of a right to protection against invasion of privacy.[2] Even earlier, the existence *1388 of such a right had been implicit in the remedies afforded by certain courts: in Denis v. Leclerc, 1 Mart. (O.S.) 297 (1811), the Louisiana Supreme Court upheld an injunction of publication of the plaintiff's private letter written to a third party by finding that the writer had an exclusive property right in the letter. A 1905 Georgia decision, Pavesich v. New England Mut. Life Ins. Co., 122 Ga. 190, 50 S.E. 68, is considered the first case to expressly affirm the principle of a right to privacy. Also in 1905, this court declared in Itzkovitch v. Whitaker, 115 La. 479, 482, 39 So. 499, 500, that: "Every one who does not violate the law can insist upon being let alone (the right of privacy). In such a case the right of privacy is absolute."
By 1978, the right of privacy was recognized by the courts of all but three states.[3] The right of privacy embraces four different interests, each of which may be invaded in a distinct fashion; Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); Prosser, Law of Torts, 4th ed. (1971); Prosser, Privacy, 48 Calif.L.Rev. 383 (1960); Restatement Second of the Law of Torts (1959). One type of invasion takes the form of the appropriation of an individual's name or likeness, for the use or benefit of the defendant. While it is not necessary that the use or benefit be commercial or pecuniary in nature, the mere fact that a newspaper is published for sale does not constitute such use or benefit on the part of the publisher. Another type of invasion occurs when the defendant unreasonably intrudes upon the plaintiff's physical solitude or seclusion. Because the situation or activity which is intruded upon must be private, an invasion does not occur when an individual makes a photograph of a public sight which any one is free to see; Prosser, Law of Torts, 809. A third type of invasion consists of publicity which unreasonably places the plaintiff in a false light before the public. While the publicity need not be defamatory in nature, but only objectionable to a reasonable person under the circumstances, it must contain either falsity or fiction. A fourth type of invasion is represented by unreasonable public disclosure of embarrassing private facts. With reference to this category, Prosser states that "[i]t seems to be generally agreed that anything visible in a public place can be recorded and given circulation by means of a photograph, to the same extent as by a written description, since this amounts to nothing more than giving publicity to what is already public and what anyone present would be free to see." Law of Torts, 811. Similarly, the Restatement Second of the Law of Torts indicates that "there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye." Supra at 386.
In Louisiana jurisprudence, the right to privacy has been variously defined as "the right to be let alone" and "the right to an `inviolate personality.'" Pack v. Wise, 155 So.2d 909, 913 (La.App. 3d Cir. 1963), quoting Hamilton v. Lumbermen's Mut. Cas. Co., 82 So.2d 61, 63 (La.App. 1st Cir. 1955), writ denied 1955. Where an individual has such a right, in the form of one of the interests outlined above, other members of society have a corresponding duty not to violate that right. A violation constitutes a breach of duty, or fault, and may be actionable *1389 under C.C. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Pack v. Wise, supra; Tuyes v. Chambers, 144 La. 723, 81 So. 265 (1919). Where no such right to privacy exists, however, a person's conduct may be the cause of another person's embarrassment, discomfiture, or monetary loss, but it will not constitute a "legal cause," because no duty has been breached.
Even where a right to privacy is found to exist, Louisiana courts have distinguished between invasions of that right which are actionable and those which are not. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable[4] and seriously interferes with the plaintiff's privacy interest. Comment, The Right of Privacy in Louisiana, 28 La.L. Rev. 469 (1968). For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant. Lucas v. Ludwig, 313 So.2d 12 (La. App. 4th Cir. 1975), writ denied 1975. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. Thus, it was found reasonable for a school board, during the war effort, to inquire into teachers' use of their afterschool time, Reed v. Orleans Parish School Board, 21 So.2d 895 (La.App. Orl. Cir. 1945), and for a school board to require that its employees undergo medical examinations and that the results be disclosed to school officers. Pitcher v. Iberia Parish School Board, 280 So.2d 603 (La.App. 3d Cir. 1973), writ denied 1973, cert. denied 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d 109 (1974). On the other hand, it was held unreasonable for a private employer to utilize medical photographs of an employee's work-related injury, in its safety campaign, without obtaining the employee's consent or withholding his name. Lambert v. Dow Chemical Co., 215 So.2d 673 (La.App. 1st Cir. 1968).
Only a few Louisiana cases have addressed the situation in which an individual's right to privacy must be weighed against the freedom of the press guaranteed by the First Amendment of the United States Constitution and by Art. I, § 7 of the Louisiana Constitution of 1974.[5] It should be noted, however, that this court indicated in Mashburn v. Collin, 355 So.2d 879, 891 (La.1977), that "[s]ince the (United States) Supreme Court decisions from New York Times through Gertz and Firestone establish only minimum safeguards for the freedom of speech and the freedom of press under the First Amendment, it is permissible and perhaps appropriate for a state to grant broader protection of these important rights under its own constitution or laws."[6] In an early decision in this area, Martin v. *1390 The Picayune, 115 La. 979, 986, 40 So. 376, 378 (1906), this court observed that words may be actionable, even if not defamatory, under the principle of the right to privacy, but that the right "has considerable limitations." In that case, on facts that would now constitute a "false light" form of invasion of privacy, the court found the invasion to be actionable because both malice and injury had been alleged. In Schwartz v. Edrington, 133 La. 235, 62 So. 660 (1913), this court upheld the injunction of publication of a petition for village incorporation because some of the individuals who had signed the petition had subsequently repudiated it. The court found that the Louisiana Constitution of 1898 protected the publication of one's own sentiments but did not protect the unauthorized use of the purported sentiments of others.[7] In Norris v. King, 355 So.2d 21 (La.App. 3d Cir. 1978), writ denied 1978, U.S. cert. denied, the appellate court affirmed a damage award against a private individual for unreasonably harassing acts of public disclosure. However, the court distinguished that case, involving publication by a private individual in which no public interest was served by the defendant's conduct, from cases involving the privileges and responsibilities of the news media. In Mahaffey v. Official Detective Stories, Inc., 210 F.Supp. 251 (W.D.La.1962, plaintiffs sought damages for a magazine's publication of an accurate story about the murder of their son. Applying Louisiana law, the United States District Court held that plaintiffs could not recover for libel because the published material was true, and that there could be no recovery for invasion of privacy because the material was of public, newsworthy interest and because "[r]ecovery for invasion of a right of privacy is only available when the plaintiff's private affairs have been given unauthorized exposure." 210 F.Supp. 251, 253.
In deciding the case before us, it is not necessary that we reach the broad question of the extent to which freedom of the press may be limited by an ordinary citizen's right to privacy. Instead, it is only necessary that we determine the form of privacy violation which plaintiffs allege and the kind of privacy interest which they assert.
Plaintiffs have not alleged that the publication placed them, or their home, in a false light; and the record shows that the photograph was not retouched and that the property was indeed in need of repairs. It is also clear that there was no physical intrusion upon the plaintiffs' seclusion; the photograph was taken from the middle of a *1391 public street. Finally, this is not a case in which defendant has appropriated an aspect of plaintiffs' personality for its own use or benefit, since mere publication for profit may not be interpreted in this light. Plaintiffs' claim for relief must therefore be based upon the theory of public disclosure of private facts, as in Mahaffey v. Official Detective Stories, Inc., supra.
We have already indicated that, according to established principles of the law of privacy, no right to privacy attaches to material in the public view. The only question before this court is thus whether the photograph and words of description depicted a matter which was actually within the plaintiffs' protected zone of privacy. It is clear from the record that the Jauberts' home was plainly visible from the public street, and that passersby were presented with a view of the property which was identical to that published by the defendant. Therefore, plaintiffs had no right to privacy, regarding the house and its condition; defendant committed no fault, and the judgments of the lower courts are reversed; there is now judgment for the defendant, Crowley Post-Signal, Inc., rejecting the demands of the plaintiffs, at their cost.
NOTES
[1] The Right to Privacy, 4 Harv.L.Rev. 193 (1890).
[2] The right to privacy under discussion here is one which protects the individual against private action and is grounded in tort. It should be distinguished from the constitutional right to privacy which the United States Supreme Court, in a line of cases, has found to emanate from certain provisions of the Bill of Rights and to protect, from governmental invasion only, those personal rights which are deemed fundamental or implicit in the concept of ordered liberty. Schopler, Annotation, The Supreme Court's Views as to the Federal Legal Aspects of the Right to Privacy, 43 L.Ed.2d 871 (1975).

The Louisiana Constitution of 1974, Art. I, § 5, entitled "Right to Privacy," provides in pertinent part: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." This section's reference to a right to privacy represents a change from the language of earlier constitutions. A review of Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts leaves open the question of whether the section was intended to provide constitutional protection against private conduct. Generally, the provision seems to have been drafted as a counterpart to the United States Constitution's Fourth Amendment prohibition against governmental searches and seizures and other forms of "authoritarian intrusion." Transcripts, Vol. VI, 1072. However, in The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L. Rev. 1 (1974), Professor Hargrave concluded that the protection afforded by this provision is not limited to state action because the phrase "no law shall . . ." is conspicuously absent and because the provision does not appear among those sections dealing with procedural rights in criminal cases. He predicted that the provision would be a fertile field for future developments in the law of torts. At least one delegate was also of the opinion that "this proposal protects a person not only from state action but also from private action." Transcripts, Vol. VI, 1076.
In Trahan v. Larivee, 365 So.2d 294 (La.App. 3d Cir. 1978), writ denied 1979, the court found that Art. I, § 5 would prohibit the disclosure of certain city employee performance reports; but in that case the reports were in the custody of the City of Lafayette, so that disclosure might have been seen as state action.
[3] These states were Nebraska, Rhode Island and Wisconsin. First Amendment Rights to Free Speech and a Free Press: Change and Continuity, 12 Akron L.Rev. 228 (1978).
[4] Article I, § 5 of the 1974 Constitution provides protection against unreasonable searches, seizures, or invasions of privacy. See note 2, supra.
[5] Article I, § 7 of the 1974 Constitution provides: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." This section is essentially identical to the corresponding provision of the 1921 Constitution. The "abuse of freedom" wording was retained in order to explicitly bring actions for libel, slander, and defamation under the scope of C.C. 2315. One delegate to the 1973 convention noted the possibility of conflicts between certain rights guaranteed in the proposed Declaration of Rights, citing as an example the conflict between the right to privacy and the right to take photographs. Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. VI, 1114.
[6] In actions for defamation, involving injury to reputation instead of injury to a privacy interest, the United States Supreme Court has held that the plaintiff must show actual malice, i. e. that the publication was knowingly false or circulated with reckless disregard for its truth or falsity where the plaintiff is a public official, New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), or a public figure, Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Where the plaintiff in a defamation action is a private individual and the content of the factual misstatement should have warned a reasonably prudent editor of its defamatory potential, the Court has held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability." Gertz v. Robert Welch, Inc., 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789, 809 (1974) (emphasis added).

In actions for the "false light" form of invasion of privacy, the Court has held that the actual malice showing is required where the material is assertedly private but a matter of public interest. Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). But in Cantrell v. Forest City Publishing Co., 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), the Court noted that it had not yet addressed the issue of whether the actual malice standard is constitutionally required in all "false light" invasion of privacy cases, where the plaintiff is a private individual.
Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), involved an action based on the public disclosure theory of invasion of privacy, in which the published material is true but embarrassing or painful to the plaintiff. The Court declined to hold broadly that the press may never be made liable for publication of accurate material, no matter how damaging it may be to a plaintiff's sensibilities or reputation. Instead, the Court found that the material published formed part of the public records and was therefore not private. Justice Powell, concurring, was of the opinion that, under Gertz v. Robert Welch, Inc., supra, truth is a complete defense not only to a defamation suit by a private individual but also to an invasion of privacy action where the interests to be protected are similar to those considered in Gertz.
[7] Article 3 of the 1898 Constitution provided: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press; any person may speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."