960 So.2d 1024 (2007)
Felton HOGAN
v.
Joe MORGAN, M.D.
No. 2006 CA 0808.
Court of Appeal of Louisiana, First Circuit.
April 26, 2007.
*1026 Christopher L. Whittington, Baton Rouge, Counsel for Plaintiff/Appellee Felton Hogan.
Herbert J. Mang, Jr., Tara S. Bourgeois, Baton Rouge, Counsel for Defendant/Appellant Joe Morgan, M.D.
Before: PARRO, KUHN, PETTIGREW, GAIDRY, and WELCH, JJ.
KUHN, J.
Plaintiff-appellee, Felton Hogan, filed suit against defendant-appellant, Joe Morgan, M.D., seeking to recover "mental and physical damages as a result of [Dr. Morgan's] unreasonable invasion of [Hogan's] right to privacy as well as his battery upon [Hogan]." Hogan's suit stems from Dr. Morgan's physical examination of him during an August 11, 2003 independent medical exam ("IME"). Dr. Morgan appeals a trial court judgment in favor of Hogan. We reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND
According to the allegations of Hogan's petition in this case: 1) he injured his upper back, shoulders and cervical spine in an October 24, 2001 vehicular accident; 2) Hogan sought recovery from his under-insured motorist carrier, Liberty Mutual Insurance Company ("Liberty Mutual") in a separate action; and 3) Liberty Mutual retained the services of Dr. Morgan to conduct an IME in the other action. One week before the IME, Liberty Mutual hand-delivered Hogan's medical records from other providers and a copy of a July 25, 2003 trial court order to Dr. Morgan's office.[1] The trial court order had restricted Dr. Morgan's physical examination of Hogan "to the cervical, shoulder and upper back area," and the order further instructed that there "shall be no physical examination regarding any other portion of [Hogan]." Neither Dr. Morgan nor any members of his office staff reviewed the paperwork before he performed the IME and, thus, Dr. Morgan was unaware the order existed when he examined Hogan. Dr. Morgan conducted a routine orthopedic and neurological examination of Hogan's entire body. Although Hogan commented once or twice during the examination that Dr. Morgan was not supposed to go below his shoulders, he allowed Dr. Morgan to complete the full examination.[2]
The trial court signed a judgment in favor of Hogan in the amount of $2,500.00, *1027 finding in oral reasons that Dr. Morgan was "liable for [exceeding] the scope of . . . the court-ordered examination." The trial court found that the full examination of Hogan's body was "offensive to [Hogan]" and that the examination caused him "extreme embarrassment."
Dr. Morgan has appealed, urging:
1) The trial court committed manifest error in finding that [Dr. Morgan] exceeded the scope of [Hogan's] consent in conducting a complete independent medical examination of him.
2) The trial court was manifestly erroneous in finding that [Dr. Morgan's] examination of [Hogan] caused him to suffer an offensive touching.
3) The trial court abused its discretion in awarding [Hogan] $2,500.00 for mental damages allegedly sustained during the performance of an independent medical examination.

II. ANALYSIS
A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880, 882 (La.1993). Appellate review of questions of law is simply to discern whether the trial court's interpretive decision is legally correct. In re Succession of Hebert, 03-0531, p. 9 (La.App. 1st Cir.9/17/04), 887 So.2d 98, 105, writ denied, 04-2571 (La.12/17/04), 888 So.2d 872. If legal error is found, an appellate court is to make a de novo review. Id.
We reverse the trial court's award of damages to Hogan because the record does not establish a legal basis for the award. The record provides no support for a finding that Dr. Morgan committed a battery. Further, the record does not support a finding that Dr. Morgan's conduct while performing the IME was unreasonable or that it seriously interfered with Hogan's privacy interest, such that it amounted to an actionable invasion of privacy.

A. Battery
A harmful or offensive contact with a person, resulting from an act intended to cause that person to suffer such a contact, is a battery. The intent need not be malicious nor need it be an intent to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. Caudle v. Betts, 512 So.2d 389, 391 (La.1987).
The trial court found that Dr. Morgan intended to touch Hogan and that Hogan found this touching to be offensive. The trial court also found, however, that Dr. Morgan did not intend to harm Hogan. Rather, the record soundly demonstrates that Dr. Morgan had no intent to inflict a harmful or offensive contact upon Hogan. According to Dr. Morgan's uncontradicted testimony, the only reason that he conducted a complete IME is that he was not aware of the July 25, 2003 trial court order. In its reasons for judgment, the trial court concluded that Dr. Morgan lacked personal knowledge of the trial court order. Although Hogan stated that he commented to Dr. Morgan during the IME that he was "not supposed to go below [his] shoulders," Hogan did not mention to Dr. Morgan that there was a court order limiting the IME. Dr. Morgan testified that if Hogan had told him about the court order, he would have stopped the IME.[3] Dr. Morgan explained that he first became aware that the order existed when he received a contempt citation after the IME.
Dr. Morgan testified that IME patients commonly question the scope of an IME, particularly when the IME extends beyond *1028 the part of the body that the patient asserts has been injured. Previously, he has had some patients that leave before he finishes an IME. Dr. Morgan explained that if a patient refuses to let him examine them, he tells them that they can leave. He stated, however, that Hogan did not refuse to allow the examination below his shoulders, made no effort to stop the examination, and voiced no objections. He described Hogan as being "cooperative" during the IME.
Dr. Morgan further testified that whenever a patient presents with some type of injury to the spine, he routinely performs a complete orthopedic and neurological examination. He also stated that his examination of a patient had never been previously limited by a court order and that he had no reason to suspect the existence of such an order in relation to Hogan.
Because the record does not contain any evidence establishing that Dr. Morgan intended his examination of Hogan to be harmful or offensive, we find no battery occurred. Our finding is reinforced by Hogan's own characterization of the examination, as described below.

B. Invasion of Privacy
Article I, Section 5 of the Louisiana Constitution expressly prohibits unreasonable invasions of privacy. The right to privacy in Louisiana has been described as "the right to be let alone." Jaubert v. Crowley Post-Signal, Inc., 375 So.2d 1386, 1388 (La.1979). The right to privacy protects varied interests from invasion. Among the interests protected is the individual's right to be free from unreasonable intrusion into his seclusion, solitude, or private affairs. The right is not absolute; it is qualified by the rights of others. Angelo Iafrate Const., L.L.C. v. State ex rel. Dep't of Transp. and Dev., 03-0892, p. 5 (La.App. 1st Cir.5/14/04), 879 So.2d 250, 255, writ denied, 04-1442 (La.9/24/04), 882 So.2d 1131. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. Jaubert v. Crowley Post-Signal, Inc., 375 So.2d at 1389, citing Comment, The Right of Privacy in Louisiana, 28 La.L.Rev. 469 (1968).
A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. Schlagenhauf v. Holder, 379 U.S. 104, 119, 85 S.Ct. 234, 243, 13 L.Ed.2d 152 (1964).
Louisiana Code of Civil Procedure article 1464 provides, in part:
When the mental or physical condition of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician. . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person . . . by whom it is to be made.
It has been noted that the apparent purpose of providing for limitations on medical examinations under La. C.C.P. art. 1464 is to restrict the circumstances under which a party may be required to submit his mind or body for examination, thus balancing considerations of the sanctity of the body and the right to privacy with considerations of fairness in the judicial quest for truth. See Alugas v. Halbert, 378 So.2d 192, 193 (La.App. 4th Cir.1979).
Although it is undisputed that Dr. Morgan did in fact exceed the scope of the July 25, 2003 trial court order, albeit without his knowledge, the record also establishes that Hogan implicitly consented to Dr. *1029 Morgan's examination of his entire body during the IME. He allowed Dr. Morgan's examination to continue below his shoulders, and although he told Dr. Morgan, "[Y]ou're not supposed to go below my shoulders," he made no effort to refuse or stop the examination. Hogan admitted that he did not tell Dr. Morgan to stop the exam, and he stated that he "let [Dr. Morgan] do what he wanted to do because that's in reason. . . ." He further stated, "He was doing a reasonable extent of his job so I didn't see no need to stop him."
Based on the entirety of the evidence presented in the record, we find that Hogan failed to prove the essential elements of a claim for invasion of privacy. Although Hogan claims that Dr. Morgan intruded on his physical solitude or seclusion by conducting the unlimited IME, the record does not support such a conclusion.
Hogan described the IME as lasting ten to fifteen minutes.[4] The examination was non-invasive and consisted of voluntary movements by Hogan upon Dr. Morgan's request and the limited placement of Dr. Morgan's hands on Hogan for the purpose of conducting certain orthopedic and neurological tests that were part of the IME. Although Hogan stated that he felt "violated" and "uneasy" during the examination, we find no actionable claim because Dr. Morgan acted reasonably in performing the complete IME. Dr. Morgan was unaware of the trial court order, and Hogan failed to halt the exam or advise Dr. Morgan that the order had been issued. We find any implicit conclusions by the trial court that Dr. Morgan's conduct was unreasonable to be manifestly erroneous. Further Dr. Morgan's actions did not seriously interfere with Hogan's privacy interests. Hogan himself characterized Dr. Morgan's examination as "in reason" and "reasonable," and Hogan implicitly consented to the examination by not halting it when it proceeded below his neck and shoulders.

III. CONCLUSION
For these reasons, the trial court's judgment in favor of Hogan is reversed. Appeal costs are assessed against Hogan.
REVERSED.
WELCH, J., dissenting.
I respectfully dissent from the majority opinion in this case, which reverses the judgment of the trial court. I would affirm the judgment of the trial court with regard to liability, but amend the judgment with regard to damages.
The order to which the parties stipulated provided: "IT IS ORDERED that Dr. Joe Morgan, the defendant's choice of medical examiner, restrict his medical examination of Mr. Felton Hogan to the cervical, shoulder and upper back area and there shall be no physical examination regarding any other portion of Mr. Felton Hogan." It is undisputed that Dr. Morgan exceeded the scope of the independent medical examination, even after Mr. Hogan told Dr. Morgan, "You know, you're not supposed to go below my shoulders."
In oral reasons for judgment, the trial court stated:
Mr. Hogan's statement to Dr. Morgan should have placed Dr. Morgan on sufficient notice of a . . . limitation upon his medical exam. Dr. Morgan simply ignored the statement of Mr. Hogan that he was not to go beyond the area prescribed. I don't know why Dr. Morgan proceeded beyond the scope of what Mr. Hogan said. I find that important especially *1030 with the fact that Mr. Hogan is not trained, he's not in the area of knowledge of profession that Dr. Morgan is. Dr. Morgan has a standard obligation under the code of medicine practice [sic] to listen to the patient and even though he's not a treating physician, this is a medical exam that he's conducting. So the standard of his profession does apply to him and when a patient says, no, you're not to do something, then you must cease and desist. Dr. Morgan did not do that. I find him liable for going beyond the scope of the . . . the court ordered [independent medical] examination. With respect to injuries, Dr. Morgan did not intend to harm. That's true. I don't find harm that he intended to harm. He intended to touch which was offensive to Mr. Hogan. Mr. Hogan appeared at trial and [he] seemed to be a very, very submissive person based upon his testimony and my observation. There seemed to be a person who submits to authority . . . Mr. Hogan is not that type of person [who would leave the examination] based upon my observation and based upon his testimony. He tends to submit. I have to take the person as I see him and as the facts show. Having considered the lack of intent to cause harm but having further found Dr. Morgan liable for exceeding the scope of the exam, I do and will award Mr. Hogan damages. He did indicate that he felt invaded. He felt as if he was less than a man, and the touching to him was offensive. . . . For Mr. Hogan it was extreme embarrassment [for] him to submit to anything other than what he consented to. I award liability and I award damages in the amount of $2,500.00. . . . "
Clearly, the trial court's ruling in this matter was based largely on credibility determinations through its personal observation of the plaintiff, Mr. Hogan. After determining that Mr. Hogan was a submissive person, that Dr. Morgan (for some unknown reason) ignored Mr. Hogan's statement that Dr. Morgan was not to go below Mr. Hogan's shoulders, that Dr. Morgan intended to touch Mr. Hogan, and that Mr. Hogan found the touching to be offensive, the trial court found Dr. Morgan was liable for damages.
Factual findings, including those based on determinations regarding the credibility of witnesses, cannot be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The appellate court must be cautious not to reweigh the evidence or substitute its own factual findings just because it would have decided the case differently. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3112 (La.7/5/94), 639 So.2d 216, 221. This is because in reviewing the cold record of a trial, an appellate court is not in a position to ascertain the tone in which a witness responds to a question nor his demeanor. These factors and other factors play a critical role in a fact finder's evaluation of a witnesses' credibility. For this reason, great deference is afforded the trier of fact in determinations of credibility, and accordingly, the "manifest error" or "clearly wrong" standard of review was established to preclude the de novo review of the factual findings of a trial court by a court of appeal. See Rosell, 549 So.2d at 844 n. 2; Canter v. Koehring, 283 So.2d 716, 724 (La.1973).
While recognizing that Dr. Morgan did in fact exceed the scope of the order, and that Dr. Morgan did so despite Mr. Hogan's statement that he was not to go below the shoulders, the majority overturns a trial court's factual findings on liability and damages by finding that Mr. Hogan "implicitly" consented to an examination of his entire body because Mr. Hogan "made no effort to refuse or stop the *1031 examination." This finding ignores the trial court's factual finding that Mr. Hogan was a "very" submissive person, that Mr. Hogan specifically told Dr. Morgan he was not to go below his shoulders during the examination, that Dr. Morgan ignored this statement and intended to touch Mr. Hogan, and that Mr. Hogan found the touching to be offensive.[1] Thus, on a cold record and without deference to the trial court's factual findings and determination of credibility, which led to its decision on liability, the majority has substituted its own evaluations of credibility and its own inferences of fact  that Mr. Hogan was not submissive and therefore possessed the ability to stand up for himself and stop the examinationwithout establishing that the trial court was manifestly erroneous or clearly wrong in its underlying factual findings in this regard.
After reviewing the record in this matter, I believe that great deference should be given to the trial court's determination that Mr. Hogan was a submissive person. This factual finding, coupled with the fact that Mr. Hogan did inform Dr. Morgan that he was not to go below his shoulders, sufficiently establishes a reasonable basis for the trial court's determination that Dr. Morgan was liable to Mr. Hogan. Thus, I do not believe that the trial court's factual findings that Dr. Morgan was liable to Mr. Hogan for damages was manifestly erroneous. Therefore, I would affirm the judgment of the trial court in this regard.
However, with regard to damages awards,
[T]he discretion vested in the trier of fact is "great" and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
In this case, the evidence indicated that the IME lasted approximately ten to fifteen minutes. Mr. Hogan testified that he felt violated and embarrassed. In light of this evidence, I believe that the trial court abused its vast discretion in making the award of damages in the amount of $2,500 to Mr. Hogan. Accordingly, I would amend the trial court's judgment to award damages to Mr. Hogan in the amount of $500.
For these reasons, I respectfully dissent.
PETTIGREW, J., concurs and assigns reasons.
WELCH, J., dissents and assigns reasons.
PETTIGREW, J., concurring.
The order issued by the trial court authorizing an IME of Hogan contained a prohibitive order directed to Dr. Morgan limiting the scope of his IME. Hogan consented to the IME with this limitation. Dr. Morgan, not being a party to the legal proceeding in which said order was issued in, was entitled to be served with said order and he was not. There was no legal notice to Dr. Morgan of the limitations of the scope of the IME he was to do on Hogan. Dr. Morgan performed a routine IME; therefore, there was no harmful or offensive conduct upon Hogan. I agree *1032 with the majority that the judgment of the trial court should be reversed.
NOTES
[1] Hogan's separate suit against Liberty Mutual did not name Dr. Morgan as a defendant, and because he was not a party to that proceeding, Dr. Morgan was not served with a copy of the July 25, 2003 trial court order. Dr. Morgan testified that no one informed him of the existence of the order; he did not discover its existence until after he performed the IME. Although Hogan's medical documentation and the trial court order were delivered to Dr. Morgan's office prior to the IME, the trial court order was the last of 10 various documents that were referenced in a cover letter.
[2] Hogan testified that he thought he mentioned the limitation twice. Dr. Morgan testified that Hogan commented only once that he was not supposed to examine anything but his neck and shoulders.
[3] Hogan testified that he knew the order limiting the IME existed.
[4] Dr. Morgan testified that he talked to Hogan for about ten minutes to obtain his medical history. Afterwards, he conducted a physical examination that lasted "a little over five minutes."
[1] The logical extension of the majority's reasoning suggests condoning self-defense measures taken by the plaintiff in order to stop the examination. This is the wrong result.