GRAVOIS, J.
*552 Plaintiff/appellant, Santo Dileo, appeals the trial court's dismissal of his invasion of privacy and defamation claims against defendant/appellee, James Harry. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 30, 2014, Mr. Dileo filed a "Petition for Defamation, Libel, and Invasion of Privacy Damages" against Mr. Harry. The claims arose out of a civil suit in the 40th Judicial District Court in which the parties were opposing counsel. In his petition, Mr. Dileo alleged that in the earlier case, in an opposition to exceptions, as well as in a pre-trial memorandum, Mr. Harry cited In re Dileo , 307 So.2d 362 (La. 1975), a suit involving Mr. Dileo, with the intention to invade Mr. Dileo's privacy and thus "making an unreasonable public disclosure of embarrassing private facts" about Mr. Dileo. Mr. Dileo also alleged that during a telephone pre-trial conference with Judge Madeline Jasmine and attorney Steven Reed, Mr. Harry accused Mr. Dileo of child molestation. Mr. Dileo alleged that this statement was defamatory per se .
On November 25, 2014, in response to the petition, Mr. Harry filed "Exceptions of No Cause of Action and Motion for Sanctions." Mr. Harry argued that in his petition, Mr. Dileo failed to allege any of the elements of an invasion of privacy claim, and failed to allege all of the elements of a defamation claim. Additionally, he argued that the trial court is not authorized to regulate the practice of law and thus lacked jurisdiction over these claims. On January 12, 2015, the trial court conducted a hearing on the exceptions and took the matter under advisement. In a written judgment with extensive reasons rendered on May 26, 2015, the trial court denied Mr. Harry's exception regarding the unauthorized regulation of the practice of law, granted his exception of no cause of action regarding the invasion of privacy claim, denied his exception of no cause of action regarding the defamation claim, and denied his motion for sanctions.[1]
A bench trial on the merits of the remaining defamation claim was held on January 12, 2017. Mr. Dileo called Mr. Harry and himself as witnesses. Mr. Harry testified that he did participate in a telephone conference with Judge Jasmine on October 17, 2013 regarding the selection of a trial date. He testified that he did not say during the telephone conference that Mr. Dileo was a child molester or had molested anyone, but rather that he was looking for evidence of child molestation, if it existed. He testified that the purpose behind mentioning child molestation was to show the court that the case was not ready for trial, as additional discovery was necessary. Mr. Dileo testified that during the telephone conference in question, Mr. Harry told Judge Jasmine, "I believe we can even prove that he molested his four-year-old daughter." He testified that at no time during the conference did Mr. Harry say that he needed more time to prove this.
Following this testimony, Mr. Dileo rested his case. Mr. Harry then moved for a "directed verdict." In support of his motion, Mr. Harry argued that those persons *553 present on the telephone conference did not testify, nor were they subpoenaed to testify at the trial, and thus there is a presumption that had they testified, they would have testified that Mr. Dileo was not telling the truth. Mr. Harry further argued that Mr. Dileo did not carry his burden of proof to show more likely than not that Mr. Harry made the alleged statement.
After hearing the parties' arguments, the trial court granted the involuntary dismissal of Mr. Dileo's defamation claim pursuant to La. C.C.P. art. 1672(B).[2] In its written reasons for judgment dated January 13, 2017, the trial court found that the evidence presented by Mr. Dileo was uncorroborated and insufficient to satisfy his burden of proof. The trial court found that it did not believe that Mr. Harry had made a defamatory per se statement about Mr. Dileo, either expressly or implicitly. According to the trial court, the testimony did not preponderate in favor of either party, and neither party introduced any corroborating evidence to sway the trier of fact. Thus, the trial court found that Mr. Dileo did not "satisf[y] his preponderance of the evidence burden of proof." This appeal followed.
On appeal, Mr. Dileo asserts the following assignments of error, to-wit:
1. The trial court erred as a matter of law when it granted Mr. Harry's exception of no cause of action as to the invasion of privacy claim.
2. The trial court erred when it found that Mr. Harry's statement about child molestation did not rise to the level of defamation per se when the trial court and this Court found no privilege, qualified or otherwise, existed in a pre-trial conference.
3. The trial court erred in giving the same evidentiary weight to Mr. Harry's testimony when he presented no evidence whatsoever that he had a reasonable belief of his "defamatory per se accusations against [Mr.] Dileo."
4. The trial court erred when it denied introduction of Mr. Harry's July 15, 2014 letter to the Office of Disciplinary Counsel ("ODC") concerning his molestation accusation, as well as other defamatory accusations, since Mr. Harry waived any privilege he may have had by introducing into evidence Mr. Dileo's first ODC complaint, as well as by filing his reconventional demand for defamation against Mr. Dileo for Mr. Dileo's first ODC complaint.
ASSIGNMENTS OF ERROR [3]
Invasion of privacy claim
On appeal, Mr. Dileo argues that the trial court erred when it granted Mr. Harry's exception of no cause of action as to the invasion of privacy claim.[4]
*554 "In reviewing a trial court's ruling on a peremptory exception of no cause of action, an appellate court considers this question of law de novo ." Am. Rebel Arms, L.L.C. v. New Orleans Hamburger & Seafood Co. , 15-599 (La. App. 5 Cir. 2/24/16), 186 So.3d 1220, 1222. "The function of the exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. In other words, the exception tests the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. The exception is triable only on the face of the petition, accepting as true the well-pleaded facts therein. Thus, the standard for granting an exception of no cause of action is not the likelihood that the plaintiff will prevail at trial; rather, it is whether, on the face of the petition, accepting all allegations as true, the petition states a valid cause of action for relief. On review, the appellate court asks whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action." Id. (Internal citations omitted.)
In Jaubert v. Crowley Post-Signal, Inc. , 375 So.2d 1386 (La. 1979), the Supreme Court held that the right of privacy embraces four different interests, each of which may be invaded in a distinct fashion: (1) the appropriation of an individual's name or likeness for the use or benefit of the defendant; (2) unreasonable intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity which unreasonably places the plaintiff in a false light before the public; and (4) unreasonable disclosure of embarrassing private facts. Id. at 1388. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest.
Id. at 1389. The reasonableness of the defendant's conduct is determined by balancing the plaintiff's interest in protecting his privacy from serious invasions with the defendant's interest in pursuing his course of conduct. Id.
In his petition, Mr. Dileo alleged that on two separate occasions, Mr. Harry referenced In re Dileo , supra , a lawsuit involving Mr. Dileo, that the reference had no relevance to the pleadings it was referenced in, and that the reference would not have been admissible under La. C.E. art. 609. He alleged that the case was referenced with the intention to invade his privacy thereby making an unreasonable disclosure of embarrassing private facts about him. The trial court granted Mr. Harry's exception of no cause of action as to the invasion claim, finding that legal opinions such as that rendered in In re Dileo are not private, and thus Mr. Dileo failed to assert an integral element of his invasion of privacy claim. On appeal, Mr. Dileo argues that the trial court erred in granting the exception because the "dissemination *555 of personal information about [Mr.] Dileo was prohibited by Code of Evidence Article 609."
Upon de novo review, we find that the trial court did not err in granting the exception of no cause of action at to the invasion of privacy claim. The factual allegations contained in Mr. Dileo's petition do not support an invasion of privacy claim. In Mr. Dileo's petition, his claim for invasion of privacy is based on Mr. Harry's references to In re Dileo . However, In re Dileo is a published legal opinion and is not private. Since the petition fails to allege that a privacy right was involved, we find that Mr. Dileo has failed to meet his burden of asserting an actionable invasion of privacy claim.
On appeal, Mr. Dileo argues that Mr. Harry disregarded and violated La. C.E. art. 609 to win his lawsuit, and thus the judgment of the trial court on his invasion of privacy claim should be dismissed.[5] We find no merit to this argument.
An alleged violation of La. C.E. art. 609 does not support a claim of invasion of privacy.
For the foregoing reasons, we find that the allegations contained in Mr. Dileo's petition do not give rise to a legally enforceable cause of action for invasion of privacy. The trial court thus properly granted Mr. Harry's exception of no cause of action as to the invasion of privacy claim.[6] This assignment of error is without merit.
Proffered evidence
Mr. Dileo also argues on appeal that his proffered evidence should have been admitted. During the trial, Mr. Dileo attempted to offer into evidence a letter written by Mr. Harry to the ODC regarding the ODC investigation initiated by Mr. Dileo against Mr. Harry regarding these same claims. Mr. Harry objected, claiming privilege pursuant to Supreme Court Rule XIX, Section 12. The trial court sustained *556 the objection, prompting Mr. Dileo to proffer the letter and testimony regarding the letter. Mr. Dileo now argues on appeal that Mr. Harry waived any privilege that would prevent introduction of his response letter to the ODC complaint filed against him because Mr. Harry himself introduced Mr. Dileo's first complaint letter to the ODC as an attachment to his Motion for Bond for Security that was previously filed in this case, and that Mr. Harry also violated
Supreme Court Rule XIX when he reconvened against Mr. Dileo for defamation because Mr. Dileo had filed his first ODC complaint against Mr. Harry.
Louisiana Supreme Court Rule XIX, Section 12, titled "Immunity," provides, in pertinent part:
A. From Civil Suits. Communications to the board, hearing committees, or disciplinary counsel relating to lawyer misconduct or disability and testimony given in the proceedings shall be absolutely privileged, and no lawsuit predicated thereon may be instituted against any complainant or witness. ...
The record reflects that Mr. Harry filed a "Motion for Bond for Security Costs" on October 9, 2014. As attachments to the memorandum in support of his motion, Mr. Harry included communications related to the ODC investigation in question. Specifically, he included Mr. Dileo's initial complaint against him and a letter from the ODC to him noting dismissal of the complaint. At the trial on the defamation claim, Mr. Dileo proffered Mr. Harry's response to the ODC regarding the complaint made against him. Considering Mr. Harry's own public disclosure in the instant case of communications regarding the ODC complaint filed by Mr. Dileo against him, we find that he waived his privilege against disclosure thereof, and thus the trial court erred in not allowing admission of Mr. Harry's response to the ODC complaint filed by Mr. Dileo against him. Considering this additional proffered evidence on de novo review, we now examine the merits of the trial court's granting of the involuntary dismissal of the defamation claim.
Defamation claim
Finally, Mr. Dileo argues that the trial court erred in granting the involuntary dismissal of his defamation claim. He asserts that the trial court erred when it found that Mr. Harry's statement about child molestation did not rise to the level of being defamation per se when the trial court and this Court found no privilege, qualified or otherwise existed, in a pre-trial conference. He also argues that there was nothing to support Mr. Harry's statement that he referenced the child molestation to show the case was not ripe for trial. He argues that Mr. Harry did not introduce any evidence or call any witness to prove that he did not have a reasonable belief of the child molestation allegation.
In a nonjury case, La. C.C.P. art. 1672(B) authorizes the trial court to grant an involuntary dismissal of the action at the close of the plaintiff's case.[7] "The trial court has much discretion in determining whether to grant a motion for involuntary dismissal."
*557 Treen Constr. Co., Inc. v. Schott , 03-1232 (La. App. 5 Cir. 1/27/04), 866 So.2d 950, 954. "An appellate court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly erroneous or clearly wrong. In determining whether an involuntary dismissal should be granted after the plaintiff has completed the presentation of his evidence during a bench trial, the appropriate standard is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. The trial court is not required to review the evidence presented in the light most favorable to the plaintiff." Id. (Internal citations omitted.)
To prevail on a claim of defamation, the plaintiff has the burden of proving by a preponderance of the evidence five essential elements: defamatory words, publication, falsity, malice, and resulting injury. Sommer v. Department of Transp. & Dev. , 97-1929 (La. App. 4 Cir. 3/29/00), 758 So.2d 923, 939, rehearing granted in part , 97-1929 (La. App. 4 Cir. 3/29/00), 758 So.2d 923 at 955, writ denied , 00-1759 (La. 10/27/00), 772 So.2d 122. If even one of these elements is absent, the cause of action fails. Id.
Defamatory words are those which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him. Doe v. Grant , 01-0175 (La. App. 4 Cir. 1/29/03), 839 So.2d 408, 415, writ denied , 03-0604 (La. 5/2/03), 842 So.2d 1102, citing Sommer , 758 So.2d at 939-940. To be actionable, the words must be communicated or published to someone other than the plaintiff. Words that expressly or implicitly accuse another of criminal conduct or that, by their nature, tend to injure one's personal or professional reputation are considered defamatory per se . If the plaintiff proves publication of defamatory per se words, the elements of falsity, injury and malice are presumed, although they may be rebutted by the defendant. To rebut this presumption, defendants have the burden of proving a reasonable belief in the truth of the statements. Id. See also Johnson v. Camanga , 02-1198 (La. App. 5 Cir. 4/29/03), 845 So.2d 1140, 1145.
In the instant case, the trial court in its reasons for judgment found that based on Mr. Harry's testimony, it did not believe that Mr. Harry made a defamatory per se statement about Mr. Dileo, either expressly or implicitly. Rather, the court believed Mr. Harry's recollection of events concerning the telephone pre-trial conference with Judge Jasmine that he (Mr. Harry) was merely seeking to extend discovery deadlines to ascertain the truth of the molestation allegation. The court went on to note that it seemed very likely that "[Mr. Harry's] hesitant wording attempted not to impart truth to the molestation allegations against Mr. Dileo, but perhaps skepticism."
In Snider v. La. Med. Mut. Ins. Co. , 14-1964 (La. 5/5/15), 169 So.3d 319, 323, rehearing denied , 14-1964 (La. 6/30/15), 2015 La. LEXIS 1501, the Louisiana Supreme Court recently set forth the well-established guidelines for reviewing factual determinations of the trial court, to-wit:
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. This test dictates that a reviewing court must do more than simply review the record for some evidence that may controvert the trial court ruling. Rather, it requires a *558 review of the entire record to determine whether manifest error has occurred. Thus, the issue before the court of appeal is not whether the trier of fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. This rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. (Internal citations omitted.)
Further, "[w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989). However, "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination." Id. at 844-45.
Upon review, we cannot say that the trial court's factual finding as to the defamation claim was manifestly erroneous. Mr. Dileo argues that Mr. Harry failed to provide support for his testimony. However, the burden of proof was on Mr. Dileo to prove the publication of a defamatory per se statement. Even considering the proffered letter to the ODC, we find that Mr. Dileo failed to provide any supporting evidence that Mr. Harry made a defamatory per se statement about Mr. Dileo. Mr. Harry's response letter to the ODC is consistent with his trial testimony that he was merely seeking to extend discovery deadlines. The trial court heard the testimony of both parties and chose to believe Mr. Harry's testimony over that of Mr. Dileo. Giving great deference to the trial court's ruling and upon review of the entire record, we cannot say that the trial court was unreasonable in finding that Mr. Harry did not make a defamatory per se statement about Mr. Dileo, either expressly or implicitly.[8] These assignments of error are without merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's dismissal of Mr. Dileo's invasion of privacy and defamation claims. Costs of the appeal are assessed to Mr. Dileo.
AFFIRMED

In a writ application to this Court, Mr. Harry sought this Court's supervisory review of the trial court's denial of the exception of no cause of action regarding the defamation claim. This Court denied Mr. Harry's writ application. See Dileo v. Harry , 15-476 (La. App. 5 Cir. 9/15/15) (unpublished writ disposition).

Even though Mr. Harry moved for a "directed verdict," because this case was tried in a bench trial, and not before a jury, a motion for involuntary dismissal pursuant to La. C.C.P. art. 1672 is the proper procedural device in this case. See Brock v. Singleton , 10-550 (La. App. 5 Cir. 3/29/11), 65 So.3d 649, 660.

For convenience, we address the assignments of error presented out of order.

Although the judgment on this exception was rendered on May 26, 2015, it is properly before this Court for review in this appeal. La. C.C.P. art. 1915(B) provides:
(B)(1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.
(2) In the absence of such a determination and designation, any such order or decision shall not constitute a final judgment for the purpose of an immediate appeal and may be revised at any time prior to rendition of the judgment adjudicating all the claims and the rights and liabilities of all the parties.
Based on the plain language of La. C.C.P. art. 1915(B), the May 26, 2015 judgment sustaining the exception of no cause of action as to the invasion of privacy claim was a partial judgment because it did not dispose of all of the claims. Further, the trial court did not designate it as a final, appealable judgment.

La. C.E. art. 609 provides:
A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
B. Time limit. Evidence of a conviction under this Article is not admissible if a period of more than ten years has elapsed since the date of the conviction.

We note that when a petition fails to state a cause of action, but may be amended to cure the defect, the court shall grant plaintiff leave to amend. La. C.C.P. art. 934 ; See Wirthman-Tag Construction Co., LLC v. Hotard , 00-2298 (La. 4 Cir. 12/19/01), 804 So.2d 856, 861 ; Crooms v. Lafayette Parish Government , 93-526 (La. App. 3 Cir. 1993), 628 So.2d 1224, 1226-27. If the petition's allegations are merely conclusory and fail to specify the acts that establish a cause of action, then the district court should permit plaintiffs the opportunity to amend the petition. HMC Management Corp. v. New Orleans Basketball Club , No. 10858 (La. App. 4 Cir. 1979), 375 So.2d 700, 707. However, when the grounds of the objection of no cause of action cannot be removed, then plaintiffs need not be given an opportunity to amend. Treasure Chest Casino, LLC v. Parish of Jefferson , 96-1010 (La. App. 1 Cir. 3/27/97), 691 So.2d 751, 755. In the instant case, we find that Mr. Dileo did not state a cause of action because the basis of his claim relied on a public matter and that defect cannot be cured by amending the petition. Thus, Mr. Dileo need not be given an opportunity to amend the petition as to this cause of action.

La. C.C.P. art. 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

Though he does not assign it as an error, in his appellate brief, Mr. Dileo argues that this Court should award him damages on the defamation claim. Considering our finding that the trial court did not err in granting the involuntary dismissal of the defamation claim, this argument is moot.