WICKER, J.
The instant matter, involving a claim of negligent supervision of a kindergartner who fractured her arm during recess on the playground of Fifth Ward Elementary School, is before us on appeal of the June 1, 2018 judgment granting St. John the Baptist Parish School Board's (the School Board) Motion for Involuntary Dismissal against appellant, Kabrisha Robinson, and dismissing appellant's suit with prejudice. Finding that the trial court erred in granting the School Board's motion, we reverse the trial court's June 1, 2018 judgment and remand this matter for further proceedings.
BACKGROUND AND PROCEDURAL HISTORY
On December 1, 2015, Deri'Niya Halbert, a kindergartner at Fifth Ward Elementary School in Reserve, Louisiana, fractured her left arm during recess after being pushed by a classmate from a slide platform.[1] Deri'Niya was then taken to the school nurse by the teacher on duty during recess, Chasity Henderson.[2] Deri'Niya's mother - Kabrisha Robinson, appellant - arrived at the school and took her daughter to the hospital where Deri'Niya was diagnosed with a closed displaced fracture of the lateral condyle of the left humerus.
*840 Deri'Niya's arm was placed in a cast and thereafter she underwent two surgeries.
On June 17, 2016, appellant individually and on behalf of her minor daughter, Deri'Niya, filed a Petition for Damages against the School Board. In her petition, appellant alleged that the School Board was vicariously liable for Deri'Niya's injuries caused by its inadequate and negligent supervision of Deri'Niya and the other kindergarten students during recess.
At the May 24, 2018 bench trial, during appellant's case-in-chief, appellant called Kendria Spears, principal of Fifth Ward Elementary at the time of the incident.[3] Ms. Spears testified that on the date of the incident, Chasity Henderson was the teacher on duty and that there were two classes, totaling forty-four students, on the playground during recess.[4] She further testified as to her limited recollection of the incident, as it was relayed to her by the school nurse, Beth Roussell. Ms. Spears also testified as to the school's procedure of having two to three teachers supervising students during recess. However, Ms. Spears was unsure of the exact number of teachers on duty at recess on the date of the incident.
Appellant also called Drenean Brown who became the principal of Fifth Ward Elementary in the year following the incident. Ms. Brown provided testimony regarding her knowledge of the incident and the procedures she implemented for monitoring the school's playground soon after she became principal.
Finally, appellant testified regarding the playground incident as relayed to her by her daughter, Deri'Niya, at the time of the incident.[5] Appellant testified that on the date of the incident, she received a call from the school nurse informing her that five-year-old Deri'Niya "had an accident on the playground." Appellant testified that she went to the school to pick up Deri'Niya to take her to the hospital. The hospital physicians told appellant that Deri'Niya's injury would require surgery. Thereafter, Deri'Niya underwent two surgeries. The first surgery occurred in December of 2015, during which surgeons placed a screw in Deri'Niya's arm. The second surgery, occurring in July of the following year, removed the screw.
Regarding the incident, appellant testified that Deri'Niya was playing a game with another student on top of the "platform on the slide" when the student wanted Deri'Niya to "hurry up and go down the slide, so she pushed her."[6] According to appellant, the platform on which the students played is four feet wide and six feet high. She further testified that while Ms. Henderson was under the breezeway, about fifteen to twenty feet away from the slide, there were more than six students on the slide platform at the time that Deri'Niya fell off of the top, that Ms. Henderson was the only teacher on the playground at the time of the incident, and *841 that Ms. Henderson was using her cellular phone when the accident occurred.[7]
Appellant also introduced into evidence the written stipulations of the parties, the discovery responses of the School Board, Deri'Niya's medical records, the transcripts of the deposition testimony of Kendria Spears and Drenean Brown, the Student Accident Report dated December 1, 2015, and photos of Deri'Niya's injuries.
At the close of appellant's case-in-chief, the School Board moved for a directed verdict under La. C.C.P. art. 1672, arguing that appellant failed to meet her burden of proof to establish a prima facie case of negligent supervision as set forth in Carter v. East St. John Elementary , 12-174 (La. App. 5 Cir. 11/13/12), 105 So.3d 856. Specifically, the School Board argued that appellant failed to present evidence demonstrating that the teacher to student ratio and alleged lack of supervision at recess caused the accident. The trial court, finding that appellant failed to meet her burden of proof as set forth in Carter , supra , granted the School Board's Motion for Involuntary Dismissal on June 1, 2018, and dismissed appellant's case with prejudice. It is from this judgment that appellant filed a timely appeal.
STANDARD OF REVIEW
In a nonjury case, the defendant may move for a dismissal of the action against him/her after the close of the plaintiff's case. Dileo v. Harry , 17-240 (La. App. 5 Cir. 12/13/17), 238 So.3d 549, 556, citing La. C.C.P. art. 1672(B). The appropriate standard in determining whether an involuntary dismissal should be granted is whether the plaintiff has presented sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. Jackson v. Morton , 17-194 (La. App. 5 Cir. 11/15/17), 232 So.3d 685, 687, citing Machado v. Baker Concrete Constr. , 13-273 (La. App. 5 Cir. 10/30/13), 128 So.3d 477, 481 (internal cite omitted). An appellate court may not reserve a ruling on a motion for involuntary dismissal, unless it is manifestly erroneous or clearly wrong. Id.
LAW AND ANALYSIS
In her sole assignment of error on appeal, appellant avers that the trial court committed manifest error in granting the School Board's motion for involuntary dismissal based on the trial court's determination that it was constrained to do so by this Court's ruling in Carter , supra . In support of her assignment, appellant sets forth a two-part argument wherein she first argues that the present matter is materially distinguishable and beyond Carter 's limited reach;[8] and second, appellant argues that through the presentation of evidence and material facts, she met her burden of proof under Carter to establish a claim against the School Board for failure to adequately supervise the safety of its students.
For the following reasons, we find that the trial court committed manifest error in granting the School Board's motion for involuntary dismissal. First, Carter is factually distinguishable from the present case. Second, we find that appellant presented sufficient evidence in her case-in-chief to establish her claim by a preponderance *842 of the evidence that (1) the School Board, its agents, or teachers were negligent in providing supervision; (2) there exists a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised.
Distinguishing the present case from Carter
In its oral reasons for judgment, the trial court compared the facts presented in Carter with the present case, giving particular focus on this Court's discussion in Carter regarding the student to teacher ratio during recess. In doing so, the trial court stated:
[...] obviously, this Court took a position in a case very, very similar to this several years ago, and whether I am still of that position, and the Fifth Circuit doesn't agree, and they are my boss. And I do believe that this case falls within the same particular ramifications of [ Carter ]. And even the cases [the School Board] cited in [its] argument, the facts of which I'm not familiar with, but basically, that even goes further than this case to suggest that the number of students, the ratio does not necessarily impose liability upon the school board. It says, and I do not know that there has been enough evidence presented in this particular matter to overcome the burden that the plaintiff has to and with respect to this type of cases [sic], and I am compelled to grant the defendant's motion.
While we recognize that the present matter may bear some similarity to Carter - both involve injuries sustained by students during recess as a result of the actions of another student - we find that the present matter is factually distinguishable from Carter for several reasons.
In Carter , a first-grader broke her arm after a classmate grabbed her ankles and flipped her over a bar on a play fire-truck during recess. At the time of the incident, there was only one teacher monitoring over forty first-grade students. The child's mother brought an action for negligent supervision against the School Board. At the conclusion of the bench trial, the trial court rendered judgment against the School Board for negligent supervision and awarded the first-grader monetary damages. On appeal, this Court defined the issue before it as whether the supervision provided to a group of first grade students was reasonable considering the age of the children and the attendant circumstances, and whether the accident/incident could have been prevented. Carter , 105 So.3d at 860.
We began our analysis by discussing the School Board's argument on appeal that the trial court imposed strict liability upon the School Board based on the classroom requirements of a teacher to student ratio. After a detailed examination of the record before us and jurisprudence regarding negligent supervision cases wherein a party alleged the School Board was negligent in its supervision of students, we found that although nothing had been introduced into the record setting forth a required teacher to student ratio for recess, it was more reasonable to rely on the one teacher to every forty student ratio established for physical education classes to guide the amount of supervision needed for recess. However, our analysis did not stop there; we further found that the trial court's judgment was based on several factual inaccuracies and that the trial court was manifestly erroneous in finding the School Board liable for negligent supervision in that the action of the offending student who had no prior disciplinary history was neither foreseeable nor preventable "absent *843 constant supervision, which is not required by the law in order for the School Board to fulfill its duty to provide adequate supervision." Carter , 105 So.3d at 861.
Thus, while we considered the teacher to student ratio in Carter as a factor in determining the issue of negligent supervision as it relates to a School Board, we found that it was not the sole determining factor of whether the supervision provided to a group of students was reasonable considering the age of the children and the attendant circumstances, and whether the accident/incident could have been prevented.
Similar to Carter , the instant case involves two classes of students totaling over forty children coming together to play at recess. While playing, one of the students sustained an injury as a result of the actions of another student. In both cases, a teacher was standing at least fifteen feet away and is alleged to have been the sole teacher monitoring the students. However, unlike in Carter , Fifth Ward Elementary had procedures in place regarding the required number of teachers responsible to monitor students during recess. Ms. Kendira Spears, principal of Fifth Ward Elementary, testified that at the time of the accident there should have been at least two teachers monitoring the students.[9] However, she was unable to recall the exact number of teachers monitoring the students or the names of the teachers who were monitoring students that day.
Furthermore, the present matter is factually distinguishable from Carter in the size and height of the playground equipment where the students sustained their injuries and in the cause of the injury. In Carter , a first grader was injured after falling from a stationary play fire-truck which was no more than one foot off the ground and surrounded by bars. However, in the present matter, Deri'Niya, a kindergartner, was injured after sustaining a fall from a slide platform which unrefuted testimony established was at least six feet high and four feet wide. Unlike in the present case, there were no allegations of overcrowding on the playground equipment in Carter , which may have required more attention from the teacher.
Another area of distinction involves the duration of the incident. In Carter , there were two students involved in seconds long interaction; however, in the instant matter, the testimony indicates that there were at least six kindergarten students gathered on top of the six foot high platform and that another student pushed Deri'Niya because she wanted Deri'Niya to "hurry up and go down the slide." This exchange indicates both that there were multiple kindergartners on top of the platform for longer than a few seconds and that the actual pushing of Deri'Niya took more than a few seconds to unfold, perhaps time enough for an observant teacher to see the evolving and dangerous situation.
Regarding the difference in the cause of the injury in Carter and the instant matter, in Carter , the first grader's arm was fractured after she was grabbed by her ankles by a classmate and flipped over the bar of the fire-truck. However, in the instant case, Deri'Niya was pushed off the platform of a slide. Finally, in Carter , there were no allegations that the teacher's attention was directed away from all of the students on the playground and toward her personal cellular device.
*844 The present case is also factually distinguishable from much of Louisiana jurisprudence involving negligent supervision by a School Board. In the instant case, the teacher's act of using her phone while responsible for monitoring students is a factor to consider in analyzing the School Board's alleged negligence; in other jurisprudence, teachers failed to prevent an injury because they were monitoring other students or the students were high school students and did not require the same level of attention.[10] However, in many of those cases the court looked to the age of the students and the spontaneity of the action by the student causing the injury.
Applying the Carter standard
In recognizing the duty of the School Board to provide reasonable, competent supervision appropriate to the age of the students and the attendant circumstances, as set forth in Wallmuth v. Rapides Parish School Board , 01-1779 (La. 4/3/02), 813 So.2d 341, 346, we recognized, in Carter , that this duty does not require the constant supervision of all students by an educator in order for the educator to discharge his or her duty to provide adequate supervision. Therefore, we examined the issue before us through an analysis of the three requirements necessary to establish a claim against a School Board for failure to adequately supervise the safety of its students set forth in Robinson v. Jefferson Parish School Board , 08-1224 (La. App. 5 Cir. 4/7/09), 9 So.3d 1035, 1046, writ denied , 09-1187 (La. 9/18/09), 17 So.3d 975.
In applying the three-prong test set forth in Robinson , supra , to establish a claim of negligent supervision against a School Board, we stated:
To establish a claim against a school board for failure to adequately supervise the safety of its students, a plaintiff must prove: (1) negligence on the part of the School Board, its agents, or teachers in providing supervision; (2) a causal connection between the lack of supervision and the accident; and (3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised.
Carter , 105 So.3d at 859, citing Robinson , supra .
(1) The School Board, its agents, or teachers were negligent in providing supervision
In arguing before the trial court that appellant did not meet her burden of proof of negligence on behalf of the School Board, its agents, or teachers in providing supervision, the School Board focused on this Court's discussion in Carter regarding student to teacher ratios during recess, specifically identifying our discussion of Brooks , infra and Collins , infra .[11]
In Brooks v. Orleans Parish School Board , a five-year-old student fractured her right arm during recess after being pushed from a slide by a fellow student. 560 So.2d 633 (La. App. 4th Cir. 1990). There were thirty to thirty-five students on the school yard and only one teacher who had positioned herself near a piece of playground equipment where students tended to go the fastest. At the time of the incident, the teacher on duty was tending *845 to another child and immediately rushed to the five-year-old's aid when she fell. Although the Fourth Circuit recognized that there is no requirement that the supervisor of a group of children have each child under constant scrutiny, it identified the standard of care required of the board and its supervising teachers as a "reasonable standard of care commensurate with the age of the children under the attendant circumstances." Id. at 635. In reversing the decision of the trial court, the Fourth Circuit found that the evidence failed to show a lack of supervision or negligence in supervision.
In Collins v. Bossier Parish School Board, a kindergarten student suffered a broken femur bone in his left leg when, while at recess, a classmate caused him to fall from the horizontal ("monkey") bars. 480 So.2d 846, 847 (La. App. 2nd Cir. 1985). At the time of the incident, the duty teacher was preventing several children from throwing dirt at each other. The issue before the Second Circuit was whether a teacher/student ratio of one teacher to approximately one hundred students during a recess was "adequate supervision" so as to preclude a finding of liability against the School Board and its employees. In affirming the trial court's findings that the School Board and its employees were not negligent in their supervision of the children during recess, the Second Circuit looked to the trial court's written reasons for decision wherein the court stated, "There is nothing in evidence to show that had there been more teachers on duty this unfortunate incident would not have still occurred." Id. at 848.
However, unlike the present matter where testimony was provided at trial specifically regarding the negligence of the duty teacher who is alleged to have been using her phone at the time of the incident, the appellants in Collins and Brooks did not question the conduct of the teacher at the time of the incidences, only the quality of the supervision. Furthermore, as recognized by the Second and Fourth Circuits, the record in each case was void of any evidence showing lack of supervision or negligence in supervision of the teachers. Importantly, in both Collins and Brooks , the duty teacher was attending to other students at the time of each incident.
Furthermore, we recognize that our determination that the School Board in Carter was not negligent in its supervision of students during recess was not focused solely upon the student to teacher ratio at recess. Instead, it focused on several other factors including the history of the students involved in the incident, the foreseeability of the child's actions, the actions of the teacher at the time of the incident, and the factual inaccuracies identified in the trial court's judgment.[12] Thus, the central question in making a determination of whether the School Board was negligent in its supervision of students is whether the supervision provided was reasonable considering the age of the children and the attendant circumstances, and whether the accident/incident could have been prevented. Carter , 105 So.3d at 861.
Therefore, we find that appellant provided sufficient evidence to establish her claim by a preponderance of the evidence and overcome defendant's motion for involuntary dismissal.
*846 (2) A causal connection between the lack of supervision and the accident
At trial, appellant counsel elicited the testimony of appellant who testified that Deri'Niya was on a slide platform measuring four feet wide by six feet high with more than six other students. Appellant testified that while playing, a classmate wanted Deri'Niya to "hurry up and go down the slide," so she pushed Deri'Niya resulting in Deri'Niya falling off the side of the platform. According to appellant's testimony, the teacher was about fifteen to twenty feet away and using her cell phone. While Ms. Spears testified that there were supposed to be at least two teachers monitoring students, she was unable to say with certainty if there was another teacher aiding Ms. Henderson at the time of the incident. Furthermore, the interrogatories provided by the School Board also do not identify the second teacher whom Ms. Spears attested should have been aiding Ms. Henderson. At trial, the School Board chose to reserve its cross-examination of Ms. Spears choosing, at that juncture, not to address this issue. Thus, testimony indicates that the only known teacher responsible for monitoring students during recess, was attending to her phone. In doing so, she failed to prevent the gathering of multiple students on top of the slide platform, which may have prevented the injury sustained to Deri'Niya.
Thus, appellant met her burden of establishing a causal connection between the lack of supervision and the accident.
(3) the risk of unreasonable injury was foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised.
In arguing that appellant did not meet her burden of proof as to the third prong, that the risk of unreasonable injury was foreseeable, constructive or actually known, and preventable if a requisite degree of supervision had been exercised, the School Board argued before the trial court that appellant failed to introduce evidence to suggest that more supervision would have decreased the risk of injury. At trial, appellant testified that there were more than six students on the slide platform measuring four feet wide and six feet high. She further testified that Ms. Henderson, who was the duty teacher at the time of the incident, was looking at her phone. Appellant also questioned Ms. Spears, who was principal at the time of the incident. Ms. Spears testified that the school's policy was to have more than one teacher monitoring the playground; however, she was unable to remember the names and the number of teachers monitoring students on the day of the incident. When asked about her views on overcrowding on the slide platform, Ms. Spears commented:
Again, teachers that are supervising, or teachers that are on duty are responsible for supervising all students. So if there was crowding on any type of equipment, that teacher would have immediately addressed that situation.
We recognize that while the spontaneous actions like that presented in Carter of a child grabbing another child's leg and flipping him or her over a bar on a stationary fire-truck may not be foreseeable, the act of a child pushing another while on an overcrowded slide is, however, foreseeable. Under certain facts, a jury or fact-finder may determine that a supervising teacher who is attending to her phone may miss the crowd of kindergarten students gathered at the top of a six foot high piece of playground equipment and the opportunity to redirect students to other activities as to prevent the possibility of injury.
*847 Therefore, we find that the trial court erred in finding that appellant did not meet her burden as set forth in Carter , supra , in that appellant set forth unchallenged testimony that the attending, duty teacher was distracted by her phone while supervising two classes of kindergarten students, several of whom gathered at the top of a six foot high play structure. Specifically, appellant presented testimony and evidence regarding the negligence of the duty teacher, Ms. Henderson, who was using her cellular phone at the time of the incident; a causal connection between the lack of supervision and the accident; and the foreseeability of the risk of unreasonable injury and the prevention of the injury with the requisite degree of supervision.
CONCLUSION
For the aforementioned reasons, we find that the trial court was manifestly erroneous in granting the School Board's Motion for Involuntary Dismissal against appellant and reverse the trial court's June 1, 2018 judgment granting the School Board's Motion for Involuntary Dismissal and dismissing appellant's claim with prejudice.
REVERSED; REMANDED

Prior to and during the bench trial, the appellant alleged that the incident occurred on December 7, 2015; however, the incident report completed by the school nurse is dated December 1, 2015, and the medical records submitted by appellant show that Deri'Niya was seen by doctors and diagnosed with a closed displaced fracture of the lateral epicondyle of humerus on December 1st. For the purpose of this appeal, we will refer to the date of the incident as occurring on December 1, 2015. In either case, the date of the incident is of little significance in aiding our determination of whether the trial court erred in granting an involuntary dismissal in favor of the School Board.

In the record before us, Ms. Henderson's first name appears in two forms - Chasity or Chastity. For the purpose of this appeal, Ms. Henderson will be referred to as Chasity.

Ms. Spears was principal of Fifth Ward Elementary from 2007 until 2016.

Ms. Spears testified that there were twenty students in one class and twenty-four students in another. However, she testified that the number of students participating in recess would have been less as some of the students receive remediation such as speech therapy during this period.

The School Board cross-examined only Ms. Robinson, reserving its right to examine Ms. Spears and Brown at a later time.

Under La. C.E. 801(D)(3)(f), a statement by a minor child offered against a party in an action to recover for injury to that child, or against the person responsible for the child in an action to recover damages for losses caused by the child is not hearsay.

According to the testimony of Ms. Spears, Ms. Henderson escorted Deri'Niya to the office after the incident. The student accident report, completed by the school nurse, states, "Details of Accident: 'Said Ayanna pushed her at recess. I didn't see the push but I did see her on the ground crying.' " However, it is unclear if this is a statement given by the school nurse or by Ms. Henderson.

The School Board did not file a brief on appeal and did not appear for oral argument in this matter.

According to Ms. Spears, there are at least two teachers monitoring students at lunch when there are two classes. One teacher will have lunch while the other teacher is on duty and a third person will assist the duty teacher in monitoring students on the playground.

See Hebert v. Iberville Parish School Board , 13-0177 (La. App. 1 Cir. 11/1/13), 2013 WL 5915240 ; Boston v. Jackson Parish School Board , 50,988 (La. App. 2 Cir. 11/16/16), 210 So.3d 399 ; Brooks , infra ; and Collins , infra .See generally, Glass v. Magnolia School, Inc. , 01-1209 (La. App. 5 Cir. 3/13/02), 815 So.2d 143.

As previously stated, the School Board filed no brief or memoranda in this Court. Furthermore, the School Board did not present for oral argument.

In the instant matter, it is unclear from the record whether Fifth Ward Elementary School's procedure regarding the number of teachers monitoring of students during recess was violated; however, even assuming the procedure was not violated, the question before us does not involve the rigid application of the teacher to student ratio in order to determine whether the School Board was negligent in the supervision of students.